## ERIE & W. V. R. CO. v. AMELIA KNOWLES.

ERROR TO THE COURT OF COMMON PLEAS OF LUZERNE COUNTY.

Argued April 15, 1887—Decided October 3, 1887.

1. As between a parent and child, the evidence to establish a parol gift or sale of land must be direct, positive, express and unambiguous; its terms must be clearly defined, and all the acts necessary to its validity must have special reference to it and nothing else; otherwise it is error to submit the question to the jury.
2. Shellhammer v. Ashbaugh, 83 Pa. 24; Moore v. Small, 19 Pa. 468; Poorman v. Kilgore, 26 Pa. 365; Sower v. Weaver, 78 Pa. 443; Hart v. Carroll, 85 Pa. 510, and Allison v. Burns, 107 Pa. 50, followed.

Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.; PAXSON, J., absent.

No. 237 January Term 1887, Sup. Ct.; court below, No. 43 March Term 1885, C. P.

This was an action of trespass q. c. f. by Joseph Knowles and Amelia Knowles, his wife, in right of the wife, against the Erie & Wyoming Valley R. Co., to recover damages for injuries done to the real estate of the wife. Joseph Knowles died before the trial and his death was suggested upon the record.

In 1883 Joseph and Amelia Knowles occupied a dwelling upon a lot in Marcey township, for injuries to which dwelling and lot the defendant company was charged, and a dwelling upon an adjoining lot was occupied by Mrs. Jane Evans. The defendant located its road across these two lots, and in July, 1883, laid down its first main track and one side track, passing immediately in the rear of the plaintiff's dwelling. Mr. and Mrs. Knowles continued to reside on the lot until 1885, the ground occupied by the dwelling being undisturbed by the

railroad track. In that year the defendant company laid its second main track, and, to enable it to do so, attached an engine to the rear portion of the plaintiff's house and drew it aside out of the way, leaving between it and the main part, on the exposed side, an opening about eleven feet wide. Carpets and clothes were injured, and potatoes were left exposed and were frozen. The railway made a cut through the lot four or five feet deep. Under the pleadings and evidence the plaintiff sought to recover for all these injuries.

The plaintiff in her own behalf, as evidence of title, testified that in 1866, not quite 21 years before the trial, her mother, Mrs. Elizabeth Evans,—"she gave me this lot and told me to build on it;" that her mother had been in possession of it four or five months before she gave it to her; that she with her children by a former husband had built the dwelling with about $140, the proceeds of property which came to her from the former husband, and they had fenced it and planted out about twenty trees, and that when the house was erected the land was open, unfenced. Stephen Jones, the plaintiff's son, testified that he had heard his grandmother say many times that she had given the lot to his mother. Jane Evans, the occupant of the adjoining lot, a granddaughter of Mrs. Elizabeth Evans, testified to the same effect. Mrs. Elizabeth Evans, still living, but over eighty years of age, was not called.

On the part of the defendant, it was shown that in 1883, desiring to locate its road over the two lots and learning that Mrs. Elizabeth Evans claimed to own both of them, under a contract of sale, possession thereunder and part payment of purchase money, and ascertaining from the owners of the legal title that they would release, negotiated with and in consideration of $800 obtained from her a deed to the company, dated June 26, 1883, and acknowledged July 5, 1883, for the surface of both lots. On the day of the date of this deed Joseph Knowles executed and delivered to the company a sealed agreement reciting that he "is in possession of part of certain premises conveyed to the said company by Elizabeth Evans, the owner of said premises, by deed bearing even date herewith and intended to be forthwith recorded, and is willing that the said company shall have and take possession thereof

upon reasonable notice," agreed in consideration of one dollar to deliver possession and remove the buildings within sixty days after notice so to do, and, on his failure, that possession might be recovered by proceedings before a justice and the buildings removed at his expense. Having obtained said deed and the agreement, the company entered upon the lots and laid their main and side tracks. Further, that in the negotiations by the company's agents with Mrs. Elizabeth Evans, resulting in the deed of June 26, 1883, the plaintiff was present at most of the interviews and did not claim to own the lot; that she said they ought to give her mother more money for it; that no objection was made by Mr. or Mrs. Knowles, when the company entered to lay their first track, and that Mrs. Knowles was present when the agreement to deliver possession was obtained from her husband.

Under the evidence on both sides as to title, its character more fully indicated in the opinion of this court, and evidence as to damages, the defendant, inter alia, asked for instructions by their fourth point that under all the evidence the plaintiff could not recover. The court, STANLEY WOODWARD, J., declined to affirm this point, but submitted the case upon all the evidence to the jury. A verdict for the plaintiff for $500 was returned, and judgment being entered the defendant took this writ assigning for error the refusal to affirm said point.

*Mr. J. V. Darling* (with him *Mr. E. P. Darling*), for the plaintiff in error:

1. The only testimony to the fact of the gift was that of the plaintiff herself. All the testimony offered to corroborate her story consisted of evidence of the subsequent declarations of Mrs. Elizabeth Evans, which, if made, were in the teeth of her solemn conveyance. But the plaintiff herself did not testify that the lot was given to her absolutely. She said it was given to her, but frequently adds the qualification, "to build on." And, conceding the doctrine of Graham v. Craig, 81* Pa. 459, and Campbell v. Braden, 96 Pa. 388, and s. c., 1 Cent. R. 227, that the possession of a donee under a parol gift of land may found a title under the statute of limitations, the authority is inapplicable, since the possession of the plaintiff had not exceeded eighteen years before the defendant entered.

2. To take a parol gift or contract for the sale of land out of the statute of frauds, its terms must be shown by full, complete, satisfactory and indubitable proof;—defining boundaries, indicating quantity, fixing consideration, etc.: Hart v. Carroll, 85 Pa. 510; Edwards v. Morgan, 100 Pa. 330. Of course these rules are more stringent in the case of an alleged parol sale or gift from parent to child: Poorman v. Kilgore, 26 Pa. 372; Ackerman v. Fisher, 57 Pa. 457; Moore v. Small, 19 Pa. 469; Postlethwait v. Frease, 31 Pa. 472; McKowen v. McDonald, 43 Pa. 441; Sower v. Weaver, 78 Pa. 443; Shellhammer v. Ashbaugh, 83 Pa. 24; Allison v. Burns, 107 Pa. 50.

3. The declarations of the plaintiff were not admissible to establish her interest: Riddle v. Dixon, 2 Pa. 372; nor those of Mrs. Elizabeth Evans, particularly in view of the fact that she was not called, and of her solemn assertion of title by her deed. Declarations are the most unsatisfactory species of evidence: Robertson v. Robertson, 9 W. 42; Moore v. Small, 19 Pa. 469; Hugus v. Walker, 12 Pa. 173.

4. Being a married woman, the apparent possession was that of her husband. Even the improvements were not made by her out of any separate estate: Robertson v. Robertson, 9 W. 46; Aitkin's Heirs v. Young, 12 Pa. 15; Moss v. Culver, 64 Pa. 424.

5. The sufficiency of the evidence was for the court, and the case should have been taken from the jury: Irwin v. Irwin, 34 Pa. 525; Overmyer v. Koerner, 2 W. N. 6; Mitchell Contracts, 68.

6. If there were a gift of a license to occupy and build, it was determined by the act of the donor and her deed to the defendant, and this action would not lie: 1 Add. Torts, § 385; Taylor, Land. & T., 6th ed., 531; Kellam v. Janson, 17 Pa. 467; Rich v. Keyser, 54 Pa. 86.

*Mr. Q. A. Gates*, for the defendant in error:

1. The possession of Mrs. Knowles was notice to all the world of her title: Hottenstein v. Lerch, 104 Pa. 454; Rowe v. Ream, 105 Pa. 543. A parol gift of land from parent to child is exempt from the statute of frauds, when in pursuance of said gift possession is taken and valuable improvements

made; and à fortiori, when the possession is undisturbed for a great length of time, or the improvements have added largely to the value of the property: Sower v. Weaver, 84 Pa. 262. No papers conveying her interest were signed by Mrs. Knowles, and much less the separate acknowledgment required: Glidden v. Strupler, 52 Pa. 400; Buchanan v. Hazzard, 95 Pa. 240; Stoolfoos v. Jenkins, 12 S. & R. 399; Keen v. Coleman, 39 Pa. 299.

OPINION, MR. JUSTICE GREEN:

In the case of Shellhammer v. Ashbaugh, 43 Pa. 24, we said: "The rule is settled, therefore, that as between father and child the evidence of a gift or sale must be direct, positive, express and unambiguous; that its terms must be clearly defined, and that all the acts necessary to its validity must have special reference to it and nothing else."

In Moore v. Small, 19 Pa. on p. 468, Mr. Justice WOODWARD thus speaks of parol gifts of lands: "A class of cases commonly called parol gifts from father to son is found in our books, the origin of which was in Syler v. Eckhart, 1 Binn. 378, very thoroughly reviewed by Judge KENNEDY in Eckert v. Eckert, 3 P. & W. 362. The case before us belongs to this family. Now let it be observed that the legislature of Pennsylvania have made no provision either in the act of 1818, or that of 1834, or any other act of assembly, for the conveyance of title in pursuance of a *parol gift* of land. . . . . . There is no such thing as the execution of a parol gift of lands under the statute of frauds, even between father and son. Gift is indeed a common law mode of assurance, but it is a contract executed. . . . . . And if it be said that a son who goes upon land under a promise of a conveyance from his father, and expends his labor and money in making valuable improvements which cannot reasonably be compensated, is entitled to a decree of conveyance, it is because he is a purchaser for a valuable consideration. . . . . . If the contract were ever made it must have had a time and place and terms, and it would be reasonable to expect a witness to speak of these; but declarations and confessions of the father have been so frequently received in evidence as proof of a contract, it is impossible to say they are unfit to go to the jury, but they should go, characterized by the

language of Judge ROGERS in Robertson v. Robertson, 9 W. 42, as the most unsatisfactory species of evidence, on account of the facility with which they may be fabricated, the impossibility of contradicting them, and the mistakes and failures of recollection. Parental declarations are often made with reference to experimental arrangements or testamentary intentions for the benefit of a son, which are sadly misapplied when brought into court as evidential of a contract of sale. The posthumous recollections of a neighborhood as to the words of a testator, should weigh but little when set against his written will." In Poorman v. Kilgore, 26 Pa. 365, LOWRIE, J., said : " The very nature of the relation therefore requires a contract between parents and children to be proved by a kind of evidence that is very different from that which may be sufficient between strangers. It must be direct, positive, express and unambiguous. The terms must be clearly defined, and all the acts necessary for its validity must have especial reference to it and nothing else." In Sower v. Weaver, 78 Pa. 443, we held that to establish a parol gift of land, the evidence must be direct, positive, express and unambiguous. Sower brought ejectment on his legal title, against Weaver who set up a parol gift; the evidence of it was the testimony of himself and his wife. Sower by his testimony contradicted theirs. Held, that Weaver and wife, being but as one witness, the testimony of another witness or its equivalent was necessary to establish the defence. In Hart v. Carroll, 85 Pa., 510, we said : " In order to take a parol contract for the sale of lands out of the operation of the statute of frauds, its terms must be shown by full, complete, satisfactory and indubitable proof. The evidence must define the boundaries and indicate the quantity of the land. It must fix the amount of the consideration. It must establish the fact that possession was taken in pursuance of the contract and at or immediately after the time it was made ; that the change of possession was notorious, and the fact that it has been exclusive, continuous and maintained, and it must show performance or part performance by the vendee which could not be compensated in damages. These rules have been settled by a long series of authorities." Indubitable proof was explained to be, " evidence that should not only be found credible, but of such weight and directness as to make out the facts

alleged beyond a doubt." The language of the last case was literally repeated in the case of an alleged parol gift of land in the case of Allison v. Burns, 107 Pa. 50.

The foregoing are but a portion of the utterances of this court upon the controlling question of the present case. They have not only never been questioned or impaired, but are the undoubted law of this commonwealth to-day, approved, sanctioned, justified by the ever recurring teachings of experience,. which constantly instruct us of their wisdom ; and, demanded now, more than ever before, by reason of the enlarged competency of witnesses which permits the interested party himself to testify in his own favor in support of this most dubious, questionable, dangerous and vexatious title to real estate by parol gift. There could scarcely be conceived a more perfect illustration of the dangers of this species of title to land than is afforded by this case. It is entirely undisputed, indeed admitted by the plaintiff, that she knew that her mother was selling this very land as her own, and that the full price for it was paid, without the slightest effort on her part to prevent the sale, or to assert her own title or claim of title, in such a way as to make it manifest to the company that she really did claim the land. She says she told Schiffer, the defendant's agent, that it was hers, that her mother gave it to her to build on, but this statement he most positively and emphatically denies, and says that he had never heard of her claim until a few weeks before the trial of the case. It is also entirely undisputed that she knew all about the original occupation of the land by the company, and their laying a track upon it, yet she made no claim for damages or sought in any manner to prevent their occupancy or to assert her title to it. These vital facts are so entirely hostile to the idea of any real ownership of the land in the plaintiff, that they destroy any theory that the evidence in support of her title is indubitable ; but there are many other facts in the case, entirely undisputed also, which demonstrate the utter lack of conformity of the plaintiff's claim with the requirements of the decisions above quoted.

Thus, she is the only direct witness to the alleged gift of the land. Yet the story she tells is so confused and uncertain as to the character of her title that it is impossible to determine whether it is a fee simple, a tenancy for life, a tenancy at will

or a mere license to erect a dwelling on the land and occupy it during the pleasure of her mother, the real owner. She was asked by her own counsel: Q. "How did you get that lot? A. Of my mother. Q. What was your mother's name? A. Elizabeth Evans. Q. How did you get this lot of your mother? A. She gave it. She gave me this lot and told me to build on it. . . . . . Q. (On cross-ex.) I want to have no misunderstanding about this. Did you say you claimed this frame house was yours, or that the land was yours? A. She gave me this ground to build on." In reply to a question as to whether she objected when the company laid their first track, she said: A. "I told them that the place belonged to me. Q. To whom did you tell that? A. I told Mr. Schiffer that she gave me this lot to build on. . . . . . Q. I want you to say when it was and to whom you claimed that this land was yours? A. I told Mr. Schiffer that we had that lot and we paid the taxes on it. Q. Did you claim to Mr. Schiffer that the land was yours, and that he ought to buy it from you and not from your mother? A. I told him that she gave us that place to build on, and we had paid the taxes on it. Q. Was that all you told him? A. Yes, sir. Q. You did not claim, then, that your mother had not a right to sell this land? A. I told him that it was ours, that she gave it to me to build on and I thought it belonged to me." She was asked whether she had ever told Evan J. Evans that she claimed the land, and said she did. Q. "What did you tell him? A. I told him the same thing, that we had paid the taxes on the place and that mother gave it to us to build on." She also said several times that her mother gave her the lot and that she told Schiffer and Evans so, but both of them deny this most positively and say they never heard of any claim of title by her until long afterwards. It will be seen, then, that upon her own testimony it is entirely uncertain whether the lot was given to her in fee simple or only to build a house upon it; and, if the latter, whether she was privileged to occupy it during her life or during the pleasure of her mother. Of course there was no fixing of boundaries, or of the quantity of land to be taken, or statement of any terms. The ground was open not fenced, unoccupied and without any marked boundaries, and from anything that was said by the owner as was testified by the

plaintiff, it would be utterly impossible to tell either the boundaries, or the quantity of land given. But, again, the alleged donor was alive and competent to testify, and if she had really made the gift it was of the utmost importance to the plaintiff's case to examine her and prove the fact. This was not done and the case is left without any verbal testimony of the grantor, but with her solemn deed to the defendant for the whole property made long after the alleged gift, and after all the declarations said to have been made by her as to the gift to her daughter. She was the plaintiff's own mother and naturally would have testified in her daughter's favor if she could. But she did not. The defendant did not need her testimony, because they had her deed which was the strongest possible assertion of her ownership. This circumstance, then, makes most strongly against the allegation of a previous gift to the plaintiff, and of itself is sufficient to cast so much doubt upon the validity of the plaintiff's claim of title as to bring it within the operation of the rule which requires such titles to be supported by indubitable proof. Then, as to the plaintiff's credibility, she is absolutely contradicted by two persons, one, the agent of the defendant in making the purchase from the plaintiff's mother, and the other, the agent of the mother in making the sale; both of whom testify most positively that the plaintiff, knowing all about the occupancy of the ground by the defendant and also the sale by the mother, never once asserted any claim of title to the land. As they are entirely disinterested witnesses it cannot be said that her testimony upon this most important, indeed, vital part of the case, is indubitable. On the contrary it can only be justly designated as of the most doubtful and unreliable character.

But, damaging as these facts are, there is another, far more serious and fatal to the truthfulness of her claim. Her husband, though living with her at that time and for many years before, and being entitled to his curtesy in the land, if it was hers, made no kind of claim of title either for her or himself to the land, but on the contrary entered into a written, sealed agreement with the company to deliver up the possession of the premises, within sixty days after notice to do so, and also to remove the buildings from the land. This agreement recites that " the said J. Knowles is in possession of part of cer-

tain premises conveyed to the said company by Elizabeth Evans, the *owner of said premises*," and that he is willing that the company shall have possession. Here is a distinct recognition of the ownership of Mrs. Evans and an agreement to give up possession, which are simply fatal to the plaintiff's claim of title. It is a useless task, because it is impossible, to try to reconcile this entirely undisputed fact with any theory of title in the plaintiff.

It was testified by Schiffer and Evans that both Mr. and Mrs. Knowles were present when this paper was signed. It was also testified by Griffiths that Mrs. Knowles was present when Schiffer and Mrs. Evans were bargaining for the lot, and that Mrs. Evans said that she was the owner of both the lots, but that the back building was put up by Mr. Knowles. It was testified by Schiffer that Mrs. Knowles was present and took part in the conversation between himself and Mrs. Evans when they were contracting for the sale of the property to the company, that she wanted him to agree to give her mother $1,000 instead of $800 for the property, and that when he notified her they wanted possession, she refused to leave unless they would give her some money. Griffiths testified that both Mrs. Jenkins (plaintiff's sister), and the plaintiff, said that Mrs. Evans owned the property. Many other facts almost equally damaging were proved on the trial, but it is not necessary to review them.

It is no answer to say that the credibility of witnesses is for the jury, and that they may disbelieve the testimony if they see fit to do so. That argument will not avail in this class of cases, for the question here is as to the character of the proof, because it is offered for the purpose of creating title to land by parol. It must conform to certain requirements, and if it does not, it will not suffice to create such a title, and of this the court must judge. The evidence of a parol gift in this case is of the weakest and flimsiest character, far more so than in several of the cases cited above, where the court below was reversed for not taking the case from the jury by a binding instruction. We are clearly of opinion that this is what should have been done in the present case, and we reverse the judgment for that reason. The defendant's fourth point

should have been affirmed. These views render it unnecessary to consider the other assignments of error.

Judgment reversed.