# Wright, Appellant, v. Nulton.

*Statute of frauds—Memorandum in writing—Parol evidence—Will—*
*Parent and child—Description of land—Contract.*

In order to take a parol contract for the sale of lands out of the operation of the statute of frauds, its terms must be shown by full, complete, satisfactory and indubitable proof. The evidence must define the boundaries and indicate the quantity of the land. It must fix the amount of the consideration. It must establish the fact that possession was taken in pursuance of the contract, and at or immediately after the time it was made, the fact that the change of possession was notorious, and the fact that it has been exclusive, continuous and maintained. And it must show performance or part performance by the vendee which could not be compensated in damages, and such as would make rescission inequitable and unjust.

Evidence of possession taken before an alleged parol contract for the sale of land is not sufficient to establish part performance. Such possession must be taken under and in pursuance of the contract, and it must be maintained as it is taken.

The possession necessary to take a parol contract for the purchase of land, out of the statute, must be taken and maintained under and in pursuance of the contract, and must be exclusive in the vendee.

Where an alleged parol contract of sale is between a parent and son, the evidence of the contract must be clearer and stronger than that of a similar contract between strangers, and the evidence to support it must be direct, positive, express and unambiguous. Not only must the terms and the condition of the contract and its subject be well and clearly defined, but the contracting parties must have been brought together face to face.

In an action of ejectment, where the plaintiffs claim under a late will of their grandmother, and the defendants, a son of the decedent and his wife claim under an alleged parol contract by which they were given the land in controversy in consideration of the support and maintenance of the mother, a will and codicil made subsequent to the alleged parol contract are not memorandums in writing sufficient to take the parol contract out of the operation of the statute of frauds, where it appears that the estate specified in these papers was different from that claimed by the parol contract, that the consideration was also different, and that the will in favor of the defendants was entirely inconsistent with the contention that a parol gift of the land had been made to the defendants.

Argued Oct. 17, 1907.   Appeal, No. 173, Oct. T., 1907, by

plaintiffs, from judgment of C. P. Armstrong Co., June T., 1904, No. 198, on verdict for defendant in case of William Wright and George S. Wright v. Daniel L. Nulton and Laura G. Nulton. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Ejectment for land in the second ward of Kittanning borough. Before PATTON, P. J.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* among others were (17) in refusing binding instructions for plaintiffs, and (24) in ordering judgment to be entered upon the record.

*H. A. Heilman* and *H. L. Golden*, with them *Rush Fullerton*, for appellants.—The defendants being in possession prior to the making of the alleged contract and no change in possession having taken place in pursuance of the said agreement, it matters not how clearly they may prove the terms of the contract, or the consideration paid, or the improvement made by them, the contract is void under the statute of frauds and cannot be enforced: Eargood's Estate, 1 Pearson, 399; Chadwick v. Felt, 35 Pa. 305; Christy v. Barnhart, 14 Pa. 260; Hart v. Carroll, 85 Pa. 508; Myers v. Byerly, 45 Pa. 368; Moyer's Appeal, 105 Pa. 432; Matthews v. Matthews, 11 Pa. Superior Ct. 381; Erie, etc., R. R. Co. v. Knowles, 117 Pa. 77.

The writing must describe the land: Smith v. Tuit, 127 Pa. 341; Shroyer v. Smith, 204 Pa. 310.

The case should have been submitted to the jury: Robertson v. Robertson, 9 Watts, 32; Myers v. Black, 17 Pa. 193; Moore v. Small, 19 Pa. 461; Anderson v. Brinser, 129 Pa. 376; Schuey v. Schaeffer, 130 Pa. 16; Sample v. Horlacher, 177 Pa. 247.

*R. A. McCullough*, with him, *W. J. Christy*, for appellees.—Part performance takes the case out of the statute: Browne on Statute of Frauds, sec. 463; Hancock v. Melloy, 187 Pa. 371; Riggles v. Erney, 154 U. S. 244 (14 Sup. Ct. Repr. 1083); Smith v. Tuit, 127 Pa. 341; Moore v. Small, 19 Pa. 461.

The written memorandum was sufficient: Smith v. Tuit,

127 Pa. 341; Myers v. Kingston Coal Co., 126 Pa. 582; Hill v. Canfield, 56 Pa. 454; O'Hara v. Richardson, 46 Pa. 385; Home Building & Loan Assn. v. Kilpatrick, 140 Pa. 405; Jacob's Est., 140 Pa. 268; Moore v. Small, 19 Pa. 461.

Daniel and Laura Nulton claim title to the land in dispute by entireties. The parol purchase was made by both, and the writings offered as a memorandum thereof corroborate this: Bramberry's Est., 156 Pa. 628; Boyertown Nat. Bank v. Hartman, 147 Pa. 558; Stuckey v. Keefe, 26 Pa. 397.

OPINION BY MR. JUSTICE POTTER, January 6, 1908:

This was an action of ejectment for a lot of ground and improvements, in Kittanning, Armstrong county. Both parties to the suit claimed under Mrs. Margaret R. Nulton. The plaintiffs were her grandsons, and claimed under a devise in her will. The defendants Daniel L. Nulton, and Laura G., his wife, were the son and daughter-in-law of Mrs. Nulton, and claimed under an alleged parol sale made by her in consideration of services to be performed by them for her benefit. The question at issue, was whether there was such a sale or not. It appears from the evidence that the property in question was the homestead of Mrs. Nulton and her husband, John R. Nulton, prior to 1875. In that year Daniel L. Nulton, who was living with his parents, was married, and brought his wife to live with them. In 1878 the father died, and Daniel and his wife continued to live in the homestead with the mother. The defendants claim that after the father's death, Mrs. Nulton gave them the homestead, in consideration of their agreement to take care of her during the remainder of her life; that Daniel was to attend to the business affairs of the mother, and the wife was to care for her in the house, and do the housekeeping. There was testimony tending to show that defendants were in possession of the premises in controversy from the time of the alleged sale until this suit was brought. The mother continued to reside at the homestead until September 17, 1902, when being ill, she was taken to the home of her daughter, Mrs. Wright, where she remained until her death in March, 1904. She was then in her ninetieth year. On February 1, 1893, Mrs. Nulton made a will, by which she gave to her son Daniel the homestead property in trust for

the use of himself and his wife during their lives, with remainder to his children and, in default of issue, to the issue of the testatrix's other children. She also devised other real estate to her son Daniel. On June 13, 1899, she made a codicil to her will, by which she gave sixty-six feet of the lot to her son and his wife absolutely. On July 3, 1903, after she had removed to Mrs. Wright's house, she made a new will, expressly revoking all former wills, by which she gave the homestead property absolutely to William Wright and George S. Wright, her grandsons, the present plaintiffs. This will was ratified by a codicil made on October 28, 1903.

The defendants offered the original will and codicil in evidence as they stated, " for the purpose of corroborating the parol gift and agreement proven by the defendants in this case, and as being a writing made by the donor subsequently to the parol gift and in pursuance thereof." They were admitted subject to exception, and their admission forms the subject of the first and second assignments of error.

The court submitted to the jury the question as to whether there was a parol gift as claimed, and whether defendants had performed their part of the agreement. The jury found for defendants, and judgment was entered on the verdict. The substance of the contention here made by the plaintiffs on appeal, is that defendants offered no evidence sufficient to prove title in them, and that the trial judge should have held as matter of law, that the plaintiffs were entitled to recover. We have then to consider (1) whether the evidence offered by defendants was sufficient to establish a parol sale of the land, and (2) whether the revoked will and codicil were such writings as would take the alleged sale out of the statute of frauds.

In the first place it is apparent that the boundaries of the land alleged to have been given were not defined. At the time the agreement was said to have been made, the homestead property had a frontage of 135 feet on Market street. No claim for all of this is made at the present time by defendants, nor did the contract specify how much of it was included. In Hart v. Carroll, 85 Pa. 508, Justice WOODWARD, said (p. 510): " In order to take a parol contract for the sale of lands out of the operation of the statute of frauds, its terms

must be shown by full, complete, satisfactory and indubitable proof. The evidence must define the boundaries and indicate the quantity of the land. It must fix the amount of the consideration. It must establish the fact that possession was taken in pursuance of the contract, and at or immediately after the time it was made, the fact that the change of possession was notorious, and the fact that it has been exclusive, continuous and maintained. And it must show performance or part performance by the vendee which could not be compensated in damages, and such as would make rescission inequitable and unjust. These rules have been settled by a long series of authorities." So also in Sample v. Horlacher, 177 Pa. 247, it was held that an alleged parol sale from mother to son, where no boundaries were defined by the contract, was not an exception to the statute of frauds, although the son had entered into possession, and made improvements.

In the present case it appears that the defendants were clearly living upon the property before the alleged contract was made, and there was no visible change of possession in pursuance thereof. The subsequent possession was merely a continuation of that previously existing. This is not sufficient under the doctrine of Dougan v. Blocher, 24 Pa. 28, for it was there held that evidence of possession taken before the alleged parol contract, is not sufficient to establish part performance. Justice WOODWARD, said (p. 34) : " Possession, to be part performance, must be taken under and in pursuance of the contract, and it must be maintained as it is taken ; and unless accompanied by such improvements and arrangements as will not reasonably admit of compensation in damages, is not, even when so taken and maintained, such part performance of a parol contract as will take it out of the statute of frauds." And in Christy v. Barnhart, 14 Pa. 260, Justice BELL said : " It is not to be disputed, at this time of day, that to withdraw a parol sale of lands from the blighting effects of the statute of frauds, there must be an open and absolute possession taken in pursuance of the contract, with a view to the performance of it. It is consequently a settled rule that a parol sale to a tenant in possession is within the statute, though his possession be afterwards continued, because there is no change of possession, in execution of the contract."

It further appears from the evidence in this case that whatever the character of the possession of the property was, which the vendees had subsequent to the parol sale, it was not exclusive, but was exercised jointly with the mother. This does not meet the test laid down by the decisions. For instance, in Chadwick v. Felt, 35 Pa. 305, the court below affirmed the point submitted by the plaintiff, " that the position necessary to take a parol contract for the purchase of land out of the prohibition of the statute must be one taken and maintained under and in pursuance of the contract, and must be exclusive in the vendee." Also one that if the vendee was in possession of the land in controversy prior to the alleged parol contract, " and his subsequent occupancy was a mere continuance thereof, his purchase lacked an essential to give it validity as a parol contract." Justice STRONG said (p. 307) : " The points propounded by the plaintiff below were in strict accordance with the law, as it has repeatedly been declared in this court, and the court of common pleas could do nothing else than affirm them."

And again in Bowers v. Bowers, 95 Pa. 477, Justice STERRETT said (p. 480) : " Exclusive possession taken and kept up in pursuance of the contract is an indispensable ingredient in every case. Hence it is held there cannot be a valid parol sale of land by one tenant in common to his cotenant in possession."

Then, again, it will be remembered that the alleged parol contract of sale, upon which the defendants in this case rely, was between a parent and son. As this court said, in Ackerman v. Fisher, 57 Pa. 457 : " In such a case it has more than once been said that clearer and stronger evidence is required of the father's intention to part with his dominion over, and ownership of, the property than is required in cases of parol contracts between strangers in blood. This is because a parent and child do not commonly deal with each other as they deal with strangers. . . . When an attempt is made to set up a parol contract of sale against a father, either by his son or one claiming under the son, the evidence of the contract must be direct, positive, express and unambiguous. Not only must the terms and conditions of the contract and its subject be well and clearly defined, but it has been held that the .contracting par-

ties must be brought together face to face. The witnesses must have heard the bargain when it was made, or must have heard the parties repeat it in each other's presence. A contract is not to be inferred from the declarations of one of the parties." This case is followed with approval in Edwards v. Morgan, 100 Pa. 330; Burgess v. Burgess, 109 Pa. 312; Derr v. Ackerman, 182 Pa. 591.

We do not find in the present record any evidence of any contract made by Mrs. Nulton when "face to face" with Daniel L. Nulton, although it was to him alone that the devise was made in the subsequent will.

With regard to the second question here involved, as to the sufficiency of the will of 1893 to take the contract out of the statute of frauds, it will be noted that this action of ejectment was brought to recover possession of a lot of ground with a frontage of fifty-eight feet on Market street, and a depth of 142.5 feet. It is marked No. 2 on the plan attached to Mrs. Nulton's will, by which it was devised to plaintiffs. The will describes it as having thereon the house in which testatrix had resided.

The alleged parol sale as referred to in various places in the testimony, was of "this homestead," "this property," "the old home," "the old homestead," "the homestead in Kittanning." But the amount of land to go with the homestead does not seem to have been defined in any of the declarations made by Mrs. Nulton.

By the will of 1893 she devised to Daniel L. Nulton a lot of sixty-six feet and one of forty-nine feet, both fronting on Market street, and the latter containing the homestead. The former is claimed by appellant to have been part of the homestead property, and Barclay Nulton testified to that effect. These lots were devised to Daniel L. Nulton, not absolutely, but in trust for the use of himself during life and to his wife, if she survived him, during widowhood, with remainder to the grandchildren of testatrix.

By the codicil of 1899, exhibit "6," the first lot, sixty-six feet in front, was given absolutely to Daniel L. Nulton and Laura Nulton, his wife. On July 23, 1903, Mrs. Nulton conveyed for a nominal consideration this lot to Daniel L. Nulton, who on the same day conveyed it to his wife. This lot is

not included in the present suit. The will of 1893 also provided that, in addition to the forty-nine feet devised to Daniel L. Nulton, he was to have an alleyway adjoining such lot, the width not being specified. His counsel claim that it was to be at least nine feet, which would make the fifty-eight feet included in the writ.

When we compare the terms of the alleged parol contract with the terms of the gift in the will, we find three material discrepancies, which are enough to prevent the will from being properly regarded as a memorandum in writing sufficient to take the contract out of the ban of the statute :

1. All the witnesses agree that Mrs. Nulton stated that she had given the homestead to both Daniel and his wife, and they now claim to hold it as tenants by entireties, which would be the result of such a gift. But the devise in the will was to Daniel L. Nulton alone. It was not absolute, but in trust for certain purposes. He was given the use of it for life, with use to his wife during widowhood, if she survived him. This was an entirely different estate from that claimed under the parol contract.

2. The consideration for the parol sale was the agreement of Daniel and his wife to care for Mrs. Nulton, her business and her household affairs during the remainder of her life. But no such consideration appears in the will. On the contrary, the will states another and entirely different consideration. It says: " In consideration that my son Daniel L. Nulton shall and will undertake and continue to execute personally the trust hereby committed to him, he shall be allowed the free use," etc.

It is manifest upon the face of the will, that the testatrix did not intend to give Daniel L. Nulton and Laura G. Nulton an estate by entireties in the property devised, or to give them any interest in consideration of their agreement to care for her and her business. The will, therefore, cannot be construed as a memorandum in writing of the alleged contract under which appellees claim, and it should not have been admitted in evidence. It had no force beyond that of a testamentary paper which has been revoked by a subsequent will.

3. In addition, the will is inconsistent with the contention that a parol gift was made by Mrs. Nulton. By the will she

asserts ownership of the property claimed to have been previously given by her to her son and daughter-in-law, and undertakes to dispose of it in a different way from the disposition alleged to have been made by parol. So the will, instead of establishing a parol contract, negatives the claim that it was written in pursuance of such a contract.

The cases relied upon by the court below were those of contracts to devise, and wills made in confirmation of those contracts. In view of the discrepancies between the terms of the parol agreement and the will, the present case cannot be considered as such an one.

" As to the question what the written agreement must contain, the general answer is, all that belongs essentially to the agreement, and more than that is not needed ; nor can parol evidence be received to supply anything which is wanting in the writing, to make it the written agreement on which the parties rely : " Parsons on Contracts (9th ed.) (1904), secs. 13, 14.

" Of the form of the agreement, it need only be said that it must be adequately expressive of the intent and obligation of the parties. It may be one or many pieces of paper.; provided that the several pieces are so connected by mutual reference or otherwise, that there can be no uncertainty as to the meaning and effect of them all, when taken together and viewed as a whole. But this connection of several parts cannot be established by extrinsic evidence. If there is an agreement on one paper, and something additional on another, and a signature on another paper, that is not a written and signed agreement, unless these several parts require by their own statement the union of the other; for if they may be read apart, or in other connections, evidence is not admissible to prove that they were actually intended to be read together :" Parsons on Contracts (9th ed.) (1904), secs. 16, 17.

" If the agreement is defective, and the letter refers to a different contract from that proved by the opposite party, the letter cannot be adduced as evidence of the contract set up. The letter must be taken altogether, and if it falsify the contract proved by the parol testimony, it will not take the case out of the statute :" 1 Sugden on Vendors and Purchasers (8th Am. ed.) (1875), p. 207.

" In order to satisfy the statute, when the memorandum relied on consists of separate papers, which it is attempted to connect by showing from their contents that they refer to the same agreement, these separate papers must be consistent and not contradictory in their statement of the terms, for otherwise it would be impossible to determine what the bargain was, without the introduction of parol testimony to show which of the papers stated it correctly : " Benj. on Sales (7th Am. ed.) (1899), sec. 223, p. 194.

" The memorandum by itself, or by reference to another writing, must show the whole contract, namely, the promise, the parties, the subject-matter, the price or consideration, and the terms or conditions. It has been said that, ' to satisfy the statute, the memorandum must contain within itself, or by some reference to other written evidence, the names of the vendor and vendee, and all the essential terms and conditions of the contract, expressed with such reasonable certainty as may be understood from the memorandum and other written evidence referred to, if any, without any aid from parol testimony :' " 1 Reed on Statute of Frauds (1884), sec. 398.

" The general rule is that it (the memorandum) must contain the essential terms of the contract, expressed with such a degree of certainty that it may be understood without recourse to parol evidence to show the intention of the parties : " Browne on Statute of Frauds (5th ed,) (1895), sec. 371.

" In the first place, assuming that there is a completed oral contract, the note or memorandum must contain the terms of the contract as completed. If it tend to falsify the contract sued upon, as by showing conditions and stipulations that have not been made to appear, or if, referring to the contract, it annex conditions to it or otherwise make variations in it, it has no effect as a memorandum of the contract alleged. In short, where the plaintiff proposes to rely upon a written admission of the contract, with the defendant's signature, he must produce such a writing as will tend to prove and not disprove the existence of the contract alleged, as a concluded agreement between the parties : " Browne on Statute of Frauds (5th ed.) (1895), sec. 371 a.

In the present case, we do not find that the will contains the contract sought to be enforced. The testatrix disposed of

the property which is the subject of the contract, in a manner quite different from that covered by the terms of the alleged parol agreement.

The seventeenth and twenty-fourth assignments of error are sustained, and the judgment is reversed, and it is ordered that judgment be entered in favor of the plaintiffs in the court below.