## Manley *v.* Manley, Appellant.

298

Submitted September 8, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Richard H. Anderson,* for appellant.

*Timothy F. Sullivan,* for appellee.

OPINION BY HOFFMAN, J., February 2, 1976:

Appellant contends that the court below erred in two respects: (1) by permitting testimony as to the significance of a promissory note in violation of the parol evidence rule; and, (2) by finding sufficient evidence to support appellee's claim to be a holder of a life estate under a destroyed, unrecorded deed.

The unusual circumstances leading to the present dispute are clouded by the lack of specificity in appellee's

testimony as to the chronology of events and by the familial and legal relationships of the parties. Appellant, Alice T. Manley, is the former daughter-in-law of the appellee, Mary Manley. Alice was divorced from Harry Manley, Jr., who is now deceased.

During 1961, appellee and her husband sold their home in Drexel Hill and moved in with their son William. They gave $5,500 to Harry, Jr., and appellant to aid in financing the construction of an apartment building at 215 Felton Avenue, Collingdale. The $5,500 was a part of the proceeds of the sale of the Drexel Hill home. The parties orally agreed, at the time of this "investment," that appellee and her husband would be permitted to live in an apartment in the new building for the rest of their lives. In June of 1963, when the building was completed, they moved into apartment 2A. On July 1, 1963, Harry, Jr., and appellant executed a promissory note in favor of appellee in the amount of $5,500. On July 22, 1965, Harry, Jr., paid appellee $1,500; and the face of the note was accordingly reduced. In 1968, appellee's husband died. Sometime between 1968 and 1971, appellee wrote on a small piece of paper: "Mom is to have the use of apartment 2A, while she lives."[1] The paper was signed first by appellant and later by Harry, Jr. Appellee took this step because she feared that her daughter-in-law might try to force her to move to a smaller apartment. Thereafter, appellee destroyed the document at the direction

---

1. There were some minor discrepancies in testimony as to the contents of the note. Mary Manley testified to the words: "Mom is to have the use of apartment 2A, while she lives." When asked by her attorney whether there was anything more than just apartment 2A, she answered, "No." When asked to repeat the words on cross, she used the same words. The two witnesses who testified on Mary Manley's behalf, however, supplemented these words with the street address: "215 Felton Avenue, Collingdale, Pennsylvania." One of the witnesses testified that she saw only Alice Manley's signature. The other testified that she saw signatures of Harry, Jr., and Alice Manley.

of appellant during a heated telephone conversation. Thus, the document was not available for production at trial. In her pleadings, appellant denied that the deed existed, but did not testify at trial.

Sometime in 1972, Harry, Jr., and appellant separated; and Harry, Jr., came to live with appellee. On November 24, 1972, Harry, Jr., agreed, *inter alia,* to deed to appellant the 215 Felton Avenue property. Subsequently, a second property settlement was drawn up and executed, which was the same in most material respects except for the following reference to the 215 Felton Avenue premises: "21. Wife agrees that husband's mother may continue to reside and exclusively occupy a certain apartment, being apartment No. 2A, at premises 215 Felton Avenue, Collingdale, Pennsylvania, being occupied by husband's mother, for and during the term of her natural life providing wife retains an ownership interest in said premises during said period of time, in consideration for which, husband agrees to pay to wife or her designee, the sum of One Hundred Forty ($140.00) Dollars per month as full rental payment for the use and occupancy of said apartment by husband's mother." On November 3, 1972, Harry's attorney wrote appellant's attorney suggesting a further modification of the property settlement which would have provided for a waiver of appellee's right to repayment from appellant on the $4,000 note balance in return for appellant's agreement to permit appellee to live rent free in Apartment 2A. Nothing further appears to have been done in regard to this proposed modification; and, on February 28, 1973, Harry, Jr., executed a deed to appellant which was duly recorded. No mention was made in the deed of appellee's life estate.

On May 17, 1973, appellant's attorney wrote to appellee threatening her with eviction because Harry, Jr., had not paid the rent. On November 8, 1973, Harry, Jr., died,

leaving substantial real and personal property; his will directed that the property be sold and proceeds be placed in trust for his mother. During the months of November and December, 1973, appellee made two rental payments from cash given to her by her son for that purpose.

Appellee filed an action to quiet title in a life estate in apartment 2A, 215 Felton Avenue, Collingdale; and a trial was held on November 6, 1974. Appellee was permitted to testify, over timely objection, that the $5,500 note, ostensibly made as evidence of a loan, was in fact a receipt. She stated that she gave her son $5,500 as consideration for her life estate in apartment 2A. She was also permitted to testify to the contents of the destroyed "deed." Two of appellee's long-time friends testified that they each had seen the "deed" on separate occasions. William Manley, appellee's son, testified that he had heard discussions regarding the proposed "investment" in the Felton Avenue building project, but could not recall the precise content of those discussions except that it was understood that his parents would be permitted to live in one of the new apartments. The appellant did not testify.

The court below held that Harry Manley, Jr., and appellant had sold a life estate to appellee in apartment 2A, which was evidenced by a destroyed, unrecorded "deed," and that appellee was entitled to reside there for the rest of her life with no obligation to pay rent. The court held that there was sufficient testimony to establish that there was consideration for the conveyance, i.e., $5,500 and that the payment of $1,500 by Harry, Jr., to appellee was a gift, not repayment of the note. The court held that the life estate, once created, could not be cut off by the subsequent property settlement between the "grantors" of that estate or by the recorded deed by which Harry, Jr., conveyed his interest to appellant. This appeal followed.

I

Appellant's first contention is that the court below erred in permitting appellee to testify as to the significance of the promissory note. The parol evidence rule, simply stated in *Gianni v. Russell & Co.*, 281 Pa. 320, 323, 126 A. 791, 792 (1924), provides: " 'Where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement.' Martin v. Berens, 67 Pa. 459, 463; Irvin v. Irvin, 142 Pa. 271, 287. 'All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract . . . and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol evidence.' Union Storage Co. v. Speck, 194 Pa. 126, 133; Vito v. Birkel, 209 Pa. 206, 208."

In *Scott v. Bryn Mawr Arms*, 454 Pa. 304, 312 A. 2d 592 (1973), our Supreme Court confronted the question whether promissory notes, which on their face were demand notes, could be proven by parol evidence to be in reality notes callable only upon the occurrence of certain conditions and payable only from a specific fund. A unanimous Court held that: " '[t]he parol evidence rule has never barred the introduction of clear, precise, and convincing evidence to show that the party who seeks to enforce the written agreement according to its tenor has admitted and acknowledged that the agreement as written did not express what the parties intended and that what the parties intended was omitted from the agreement by mistake or accident: [citations omitted].' 394 Pa. at 233. And in the *Allinger* case, [315 Pa. 298, 172 A. 712 (1934)], the Court stated: 'The principle governing the decision in Gianni v. Russell, 281 Pa. 320, 126 A. 791 (in which case the evidence in support of the oral agreement was not, as here, uncontradicted), and cases fol-

lowing it, . . . has no application to a record like this. Those cases hold that "if the matter proposed to be shown by parol is the subject of a covenant in the agreement, which is complete, such evidence to alter its terms cannot be received" (Cridge's Est., 289 Pa. 331, 338, 137 A. 455), *unless it is admitted that the whole of the agreement is not set forth in the writing;* Ward v. Zeigler, 285 Pa. 557, 132 A. 798.' (Emphasis added.) 315 Pa. at 304. It is clear that the burden is on the proponent of the parol evidence to establish such an *admission* of incompleteness in the writing by evidence which is 'clear, precise, and convincing.' *Dunn v. Orloff,* 420 Pa. 492, 496, 218 A. 2d 314 (1966) ; *Universal Film Exchanges v. Viking Theater Corp.,* 400 Pa. 27, 161 A. 2d 610 (1960) ; *Speier v. Michelson,* [303 Pa. 66, 154 A. 127 (1931)]." 454 Pa. at 308-9, 312 A. 2d at 595. The Court held that, in the absence of such *clear, precise, and convincing* evidence of an *admission* of incompleteness, the parol testimony must be barred.

In the instant case, appellee tendered a promissory note which on its face was complete. The note had been reduced by $1,500 from its original value of $5,500. This reduction was initialed and dated on the face of the note by the obligor, the appellee. The appellee was permitted to testify that the parties used a standard form promissory note by mistake when a receipt was intended. Further, appellee was permitted to testify that the reduction made on the face of the note was a "gift" and that the underlying contract conveying the life estate remained unimpaired. Appellant never admitted that the note was anything but what it purported to be, *i.e.*, evidence of a loan. Appellee's conduct in reducing the face of the note upon payment from her son is much more consistent with the fact that the note was evidence of a loan rather than a receipt. Because there is no clear, precise, and convincing evidence of an admission that the proffered note did not embody the complete understanding of the

parties, the court erroneously admitted the parol testimony to contradict the express terms of the note.

## II

Appellant's second contention is that the court below erred in finding that the evidence was sufficient to prove the existence and terms of an unrecorded, destroyed deed. The standards for establishing by parol evidence the existence and contents of a lost deed are the same as those for establishing a parol sale or gift of land: "We are virtually establishing title to land by parol, and the proofs should therefore be as explicit as in the case of the specific enforcement of a parol sale under the statute of frauds and perjuries: Good's Petition, 1 Dist. Rep. 569." *Nicholls's Petition*, 190 Pa. 308, 313, 42 A. 692, 694 (1899). Compare *Myers v. Marquette*, 311 Pa. 198, 166 A. 361 (1933). A party seeking to establish title to land by parol testimony must meet a very high burden: "To overcome a record title, a claimant relying upon an oral agreement of sale or exchange must present evidence of the same that is 'direct, positive, express and unambiguous,' expressly defining all the terms and conditions of the contract and leaving nothing to guesswork or subject to misinterpretation. If the evidence submitted fails to meet these requirements, the Statute [of Frauds] strikes down the alleged bargain as inoperative, turning it into a mere lease or estate at will: Act of March 21, 1772, 1 Sm. L. 389, sec. 1, (33 P.S. sec. 1) ; *Glass et al. v. Tremellen*, 294 Pa. 436, 144 A. 413 ; *Hart v. Carroll*, 85 Pa. 508 ; *Sample v. Horlacher et al.*, 177 Pa. 247, 35 A. 615 ; *Wright v. Nulton*, 219 Pa. 253, 68 A. 707 ; *Sorber v. Masters et al.*, 264 Pa. 582, 107 A. 892 ; *Breniman v. Breniman et al.*, 281 Pa. 304, 126 A. 751." *Kirk v. Ford*, 330 Pa. 579, 580-81, 200 A. 26, 27 (1938).

In addition, courts are cautioned to view with special circumspection transfers of property between family members: "The very nature of the relation, therefore,

requires the contracts between parents and children to be proved by a kind of evidence that is very different from that which may be sufficient between strangers. . . . [A]ll the acts necessary for its [the contract's] validity must have special reference to it, and nothing else: 2 *Penn Rep.* 365; 8 *Barr* 213; 9 *Id* 262; 2 *Harris* 201; 7 *Id* 251-366; 1 *Casey* 308; 2 *Jones* 175. The importance of this rule is apparent; for it requires but a glance over the cases of this class to discover how sad has been the experience of the courts in family disputes, growing out of the exceptions which have been allowed to this statute [Statute of Frauds]; and how many and how distressing must have been the ruptures of the closest ties of kindred that have been produced and perpetrated by the encouragement thus given to try the experiment of extracting legal obligations out of parental [or filial] kindness." *Poorman v. Kilgore,* 26 Pa. 365, 372 (1855). See also *Brotman v. Brotman,* 353 Pa. 570, 46 A. 2d 175 (1946); *Glass v. Tremellen,* 294 Pa. 436, 144 A. 413 (1928); *Sorber v. Masters,* 264 Pa. 582, 107 A. 892 (1919); *Erie & W.V. R. Co. v. Knowles,* 117 Pa. 77, 11 A. 250 (1887); *Jordan v. Jordan,* 93 Pa. Superior Ct. 519 (1928). "When an attempt is made to set up a parol contract of sale . . . [between family members] it has been held that the contracting parties must be brought face to face. The witnesses must have heard the bargain when it was made, or must have heard the parties repeat it in each other's presence. A contract is not to be inferred from the declarations of one of the parties." *Glass v. Tremellen,* supra at 438-39, 144 A. at 414, quoting *Ackerman v. Fisher,* 57 Pa. 457, 459 (1868).

Further, a litigant must establish with particularity every element of that claim: " 'The evidence must define the boundaries and indicate the quantity of land. It must fix the amount of the consideration. It must establish the fact that possession was taken in pursuance of the contract, and at or immediately after the time it was made,

the fact that the change of possession was notorious, and the fact that it has been exclusive, continuous and maintained. And it must show performance or part performance by the vendee which could not be compensated in damages, and such as would make recission inequitable and unjust.': *Hart v. Carroll,* 85 Pa. 508, 510." *Klingensmith v. Klingensmith,* 375 Pa. 178, 183, 100 A. 2d 76, 78 (1953). Additionally, when the litigant seeks to rest his claim on a deed, which is not produced in court, he must also establish by "clear, precise, and indubitable evidence" the facts and circumstances of delivery. *Sorber v. Masters,* supra. "The Statute of Frauds prohibits the creation of interests in any land by parol. Its obvious purpose is to prevent the assertion of verbal understandings, and to obviate the opportunity for fraud and perjury. 'It is not a mere rule of evidence. It is a declaration of public policy.': Holland Fur v. Keystone Dehyd. Co., 151 Pa. Superior Ct. 495, 499, 30 A. 2d 872. A writing signed by the parties is required, and even courts of equity, though dispensing with the form, firmly demand the substance." *Brotman v. Brotman,* supra at 573, 46 A. 2d at 177. The failure of the moving party to sustain this heavy burden with respect to each and every element is fatal to his claim: "It is no answer to say that the credibility of witnesses is for the jury, and that they may disbelieve the testimony if they see fit to do so. That argument will not avail in this class of cases, for the question here is as to the character of the proof, because it is offered for the purpose of creating title to land by parol. It must conform to certain requirements, and if it does not, it will not suffice to create such title, and of this the court must judge." *Erie & W. V. R. Co. v. Knowles,* supra at 86, 11 A. at 256.

In *Erie & W. V. R. Co. v. Knowles,* supra, the Supreme Court held that a recorded deed from the same grantor was the "strongest possible assertion of . . . ownership. This circumstance, then, makes most strongly against the

allegation of a previous [parol] gift to the plaintiff, and of itself is sufficient to cast so much doubt upon the validity of plaintiff's claim of title as to bring it within the operation of the rule which requires such titles to be supported by indubitable proof." *Erie & W. V. R. Co. v. Knowles,* supra at 85, 11 A. at 255-256.

In addition to the general propositions of law related to the proof of a lost deed, there are certain presumptions of evidence which bear on the peculiar facts of this case. There is a strong presumption raised against a party who fails to produce a document which confers rights on the party who has custody of it. 2 Wigmore Evidence §291 (3d ed. 1940). "The failure or refusal to produce a relevant document, or the destruction of it, is evidence from which alone its contents may be inferred to be unfavorable to the possessor, *provided the opponent, when the identity of the document is disputed, first introduces some evidence tending to show that the document actually destroyed or withheld is the one* as to whose contents it is desired to draw an inference." Id at 187. See also McCormick, Evidence §273 (2d ed. Cleary 1972). Destruction or alteration of a document stands on a wholly different evidentiary footing than the innocent, inadvertent loss of the document.

In the instant case, appellee asserts a claim to a life estate in an apartment by virtue of a parol contract of sale consummated sometime between 1961 and 1963. She asserts that this executed contract of sale was evidenced by a "receipt" for the consideration and by a destroyed, unrecorded "deed". She is supported in her claim by two long-time friends, who claim to have seen this document and by her son, who overheard conversations related to the proposed conveyance, but who could not remember the precise words of the conversation. She asserts her rights to possession are superior to those of the holder of record title. She claims to have gone into possession after the contract was consummated.

When one seeks to establish a claim to real property under a lost or destroyed deed, the evidence must be "clear, precise, and indubitable." The proof must be "direct, positive, express and unambiguous," *i.e.*, susceptible to no other plausible explanation, when, as in the instant case, we are dealing with parol proof of a conveyance between family members. The proof in the instant case fails to meet this high standard in several respects.

First, appellant is the holder of record title to the disputed premises. There is no mention in her deed of a life estate reserved to appellee. Appellee claims to hold title from the same grantor, her son and appellant; but the proof of this title rests on parol evidence. This set of facts, alone, would cast sufficient doubt on appellee's claim.

Second, appellee seeks to rest her claim upon a "deed," which she destroyed, thus depriving the court of the best evidence of her claim. Not only does this conduct raise an adverse presumption to her claim, but it also deprives her of the "clean hands," which are required for the equitable relief she seeks.

Third, as we have already said, the parol evidence of consideration for the life estate was inadmissible by virtue of the parol evidence rule. Thus, appellee failed to produce sufficient evidence of consideration for the parol sale.

Fourth, there was no testimony of valuable improvements which would not be compensable in damages, which is an essential element of proof of a parol sale. In fact, weighing the equities of the situation, we find that the twelve years of rent-free occupancy more than adequately compensated appellee for her "investment."

Fifth, considering the wording of the alleged deed and the circumstances surrounding its delivery, appellee's case is not free from doubt. "Mom is to have the use of apartment 2A, while she lives" could equally well im-

310

ply that her son and daughter-in-law would do their best within their means to provide her with a place to live. This is the more plausible explanation in the light of the terms of the settlement between appellee's son and appellant. When appellee's son deeded his interest in the premises, he made express provision for appellee by a contract calling for a tenancy for life for appellee on condition of payment of rent. In fact, he paid rent pursuant to this contract at the rate of $140 per month for November and December, 1973. It is clear from these facts that appellee's son never conceived of the idea that he had diminished his title in fee simple by virtue of this "deed." It must be remembered, that Harry Manley, Jr., was a man who knew how title to property was passed.[2] If he meant to convey an irrevocable life estate, then he certainly would have known how to do it so as to avoid litigation. Likewise, appellee's proof of delivery of the "deed," an essential element in establishing a parol sale evidenced by a deed, raises serious doubt as to the intention of the parties to part with an estate in land. It was simply not the way deeds are customarily delivered.

For all these reasons we hold that the evidence below was insufficient as a matter of law to prove the existence of a life estate vested in appellee. We, therefore, reverse the order and judgment of the lower court, and remand for entry of an order consistent with this opinion.

---

2. The property settlement between appellant and Harry Manley, Jr., indicates that Harry Manley, Jr., engaged in an unusually large number of property transactions. He held the following: a house and lot in Secane, Pennsylvania, a house and several lots in Cape May, New Jersey, two lots in Upper Darby, Pennsylvania, and a building and several lots in Radnor, Pennsylvania. In addition, it appears from the record that Harry, Jr., once owned property in Ridley Township. He also died owning: a 1969 Cadillac convertible, a 27 foot cabin cruiser, a 16 foot speed boat, a 1972 El Camino automobile, a 1955 Datsun truck, a 1963 International dump truck, and contents of a store in Collingdale.