**Cuomo v. Hikes**

C.P. of Adams County, no. 97-S-1016.

*Eugene R. Campbell,* for plaintiff.
*Robert McQuaide,* for defendant.

SPICER, *P.J.,* April 10, 2000—Plaintiff, who is the personal representative of Frankie Lamar Moore, also known as Frankie Lamar, (decedent) filed a complaint on October 24, 1997 seeking to recover money owing on a bond that accompanied a purchase money mortgage. The complaint stated that defendants, who were then husband and wife, purchased real estate from decedent August 24, 1988 for $50,000. After paying $3,500, defendants executed a mortgage and bond to secure pay-

ment of the balance ($46,500). After decedent died November 9, 1992, plaintiff was granted letters of administration by the register of wills of Baltimore City, Maryland, on November 24, 1993.

Although the complaint gave little indication[1] that the action proceeded otherwise than on a written and signed instrument, it soon developed that plaintiff was unable to find the original bond. Thus, the action resolved into an attempt to recover on a lost bond. Tracy J. Hikes admitted signing the bond, and the case now involves only Craig W. Hikes' contention that not only did he not sign, but that decedent expressly waived the requirement for a bond.

Jury trial occurred January 13, 2000. After the jury was selected, but before trial actually started, defendant moved to exclude portions of testimony of the settlement attorney:

"Q. May I just ask you at this point, with that particular mortgage bond, do you have a recollection as to whether or not it was signed by Mr. and Mrs. Hikes?

"A. Yes. Our practice in the office would have been to sign first the mortgage bond and then the mortgage. And I would have been the witness on the first line to Mr. Hikes, and my secretary would have been the witness on the second line to Tracy Hikes. . . .

"Q. Also with respect to this mortgage bond, would you have then delivered that to anyone?

"A. Frankie Lamar left settlement with that among other papers the day of settlement. She had that and the settlement sheet, net proceeds check and that sort—copy of the amortization schedule. She took that with her.

---

1. The mortgage copy attached to the complaint displayed signatures, the bond did not.

"And although I don't specifically recall, I probably would have put it in a Bigham and Raffensperger envelope as a matter of convenience for her. . . .

"Q. So I see on the mortgage that you did not conform the signatures there so it was not your practice to do that I take it?

"A. That's correct, on neither the mortgage nor the bond. And I would have signed as attorney for mortgagee on the back page.

"Q. Would it have been your practice ever to have used the mortgage that you've used here and not have an accompanying bond with it.

"A. No, I can't recall—that wouldn't have been the practice. There—I'm sure there have been some instances where a specific lender may have provided a separate form of note or something like that perhaps with individuals." Bigham deposition, pp. 8, 9.

Cross-examination clearly indicated that the witness had no specific recollection of what occurred during settlement, and based his testimony on routine practice. However, it was clear that decedent was unrepresented, and that the settlement attorney prepared a mortgage bond and billed defendant for his work.

Defendant made payments on the bond amount until decedent's death.

Defendants post verdict motions revive his argument that the testimony was inadmissible. Clearly, this contention cannot be sustained. Evidence of habit, routine and practice has always been admissible in our Commonwealth, and case law is now reflected in Pa.R.E. 406:

*"Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is rel-*

*evant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice."*

Thus, the settlement attorney's testimony that he routinely required mortgagors to sign mortgage bonds was relevant to show that he required defendant to sign the purchase money mortgage bond in question. There is good reason for the rule. People who handle numerous transactions can hardly be faulted for forgetting details of those events. However, it is reasonable to expect they would remember exceptions to the routine.

Defendant reworks his objection as a challenge to the sufficiency of evidence. Actions may be maintained on lost instruments. 23 P.L.E. Lost Instruments §5; 4 Standard Pennsylvania Practice 2d §22:165. Plaintiff proved, albeit through testimony of the settlement attorney, the execution and delivery of the bond. Plaintiff testified that he made an exhaustive search for the original and found neither bond nor mortgage. A copy of the bond prepared by the settlement attorney was introduced to clearly show its terms and conditions. Defendant was given credit for all payments he claimed to have made.

This case presented no statute of fraud or estoppel issues.[2] The jury was properly instructed as to plaintiff's burden of proof. We find no reason to disturb its determination.

Accordingly, the court denies post verdict motions.

### ORDER

And now, April 10, 2000, defendant's post verdict motions are denied.

---

2. It therefore contrasts with the situation in *Manley v. Manley,* 238 Pa. Super. 296, 357 A.2d 641 (1976) where a plaintiff attempted to establish ownership of land through a lost deed.