## AURAND *v.* WILT.

Where one having given instructions for a will becomes incapable of understanding it before the draft is prepared and submitted to him, and so continues until his death, the draft, though proved by two witnesses to correspond with the instructions, cannot be admitted to probate.

The mere fact that one had been in possession as tenant is not a bar to the proof of a parol sale and gift to him, where he ceased to pay rent, continued to hold the land under his contract, paid part of the purchase-money, made valuable improvements, and had the property assessed in his own name.

Evidence of improvements made by a donee under a parol gift, after a controversy commenced as to the fact of the gift, is inadmissible.

In error from the Common Pleas of Union.

*July* 22. This was ejectment on a feigned issue to try the right of Elizabeth Beckley to one-third of the lands of Michael Peters, deceased, who left three heirs, of whom Elizabeth was one.

The main question was whether Peters died intestate. It appeared that Peters had sustained an injury by falling from his horse, and requested a will to be written for him, not being satisfied with one then in his possession. He gave the necessary directions for this purpose, and at the time was proved to be sensible and competent to make a will. The scrivener having received the instructions, withdrew to another room, and there prepared a will in accordance with the instructions he had received. But when he returned with the paper, Michael had sunk into a state of incapacity to understand the instrument. From this he never recovered, and died without having signed the paper, or having requested another to sign for him. These facts were proved by two witnesses.

On this point his honour, WILSON, P. J., instructed the jury that as it plainly appeared that Peters was competent to make a will at the time he gave the directions, the only question was whether he was prevented by the extremity of his last sickness from signing

or requesting some one else to sign for him, and they were to decide whether he was thus reduced while the will was being prepared, and so continued until his death.

The defendant also claimed a tract of about 145 acres, 100 acres under a parol gift from his father-in-law, Michael Peters, and the residue under a parol sale. The fact of the sale and gift, and their terms, were found by the jury; the material objections appeared to be, .1. That the defendant had been in possession as a tenant before the sale and gift were made. In answer to that, he proved, that he had ceased to pay rent, and the land was assessed to him many years before the death of Peters. On this point the court instructed the jury, that if the possession was continued under the contract, and permanent improvements were made pursuant to the alleged gift, and part of the price paid, the mere fact of a previous possession would not debar the defendant from claiming specific performance. 2. There was no line marking the division between the tract sold and that given. The court was of opinion that if there was a gift of 100 acres, and a parol sale of the residue of the tract proved, the want of a division-line was not fatal. 3. The court admitted evidence of improvements made by defendant after the death of Peters and the commencement of this controversy.

The jury found for the defendant.

*Miller* and *Slenker*, for plaintiff in error, on the validity of the will, cited, Act 1833, sec. 6; 6 W. & S. 184; 10 W. 153; 5 Whart. 386; 8 W. 21; 2 W. & S. 450; 5 Barr, 33. On the validity of the gift: 3 Penn. Rep. 332, 64 in n.; 3 W. 253; 1 Barr, 374; 2 Whart. 387; 6 W. 396; 6 Ib. 464. As to the alleged sale: 1 W. 392; 4 Ib., 305; 9 Ib. 85, 106; 1 W. & S. 383; 10 W. 204; 4 W. & S. 228; 1 Ib. 554; 6 Whart. 153; 3 Barr, 545; 6 W. 396.

*Jordan* and *Casey*, contrà :—

1st. As to the will (the court intimated that the only question was, whether, to constitute a valid will, the testator must not be in such a situation, when the will is written, as to understand it if read or explained to him): To give the affirmative to this proposition, would appear to exclude entirely the contingency contemplated by the exception in the 6th section of the act of 8th April, 1833. If he were in such a situation that he could understand it, he could also either sign it or direct it to be signed; and therefore no will, giving that construction to the act of Assembly,

could in any case be good if not signed.  Besides, this is a new provision, and is in accordance with the doctrine previously held in Walmsley v. Reed, 1 Yeat. 87 ; Rossiter v. Simmons, 6 S. & R. 452, and Harrison v. Rowan, 3 W. C. C. Rep. 580.  And it is evident that the legislature intended, by the exception in this section, to give permanency and validity to the rule, by making it the subject of an exception to the general rule: Stricker v. Groves, 5 Whart. 397.

2d. As to the gift : The judge who ruled the cause below, put everything to the jury in a very strong light against us.  The fact that he was in as a tenant at the time of the gift, does not disprove that he took possession in pursuance of his contract, as he ceased to occupy as tenant ; ceased to pay rent ; had it assessed in his own name, and made all the improvements with the knowledge of Mr. Peters, who encouraged him to proceed, and promised to make him a deed : Syler v. Eckhart, 1 Binn. 378 ; Young v. Glendening, 6 Watts, 509.

In the case of Eckhart v. Eckhart, the improvements were all made before the gift, and not in pursuance of, and on the faith of it.

The case of McClure v. McClure was not a present gift, but an agreement to give by will.  This was a present gift, and the improvements were made on the faith of it.

3d. As to the admission of the evidence of improvements, they cited 8 W. & S. 60.

*Aug.* 2.  ROGERS, J.—The 6th sec. of the act of the 8th April, 1833, enacts that every will shall be in writing, and unless the person making the same shall be prevented by the extremity of his sickness, shall be signed by him at the end thereof, or by some person in his presence, and by his express direction, and in all cases shall be proved by the oaths or affirmations of two or more competent witnesses.

To constitute a valid will, it must be ordinarily proved to be the alleged will in writing, and signed by the testator.  In the latter particular, it is admitted this will is deficient, as the name of the testator is not signed to the paper purporting to be his will.  In order to perfect the instrument for probate, it must be proved that he was prevented from signing it himself, or by some person in his presence, and by his direction, by the extremity of his last sickness. Under the circumstances disclosed by the evidence, it becomes an important question in the cause, whether the instrument purporting

to be a will, was reduced to writing within the true intent and meaning of the act. It seems not to admit of dispute that at the time the testator gave directions, as to the manner he designed to dispose of his estate, he was fully competent to make a will, and had the will been reduced to writing in his presence, it would, in all probability, have been a good and valid testament. But the proof was, as is conceded by the counsel, that when the testator dictated the will, in the presence of the witnesses, it was not reduced to writing, nor was there any note taken of it at the time as it fell from his lips, but the scrivener adjourned to another room, and there put it in writing, correctly, as he supposed, and according to the best of his recollection, and that when they returned to the sick chamber of the testator, he was incapable, from mental imbecility, of signing the will, or giving any direction in regard to it. This is the import of the testimony on which the defendant relies. Strogel says that he was the scrivener, and commenced in the morning between eight and nine o'clock, and by the time it was finished, he supposes it was about two o'clock. The old man was very weak at the time the will was made. The exertion of communicating the things that he did, seemed to exhaust all his strength. His mind became wavering, he supposes for the last hour before they presented the will to him for signing ; they had not spoken to him ; in this time they had gone out of the room to take dinner.

When Mr. Madder had presented the will for signing, the witness asked him whether he would sign it, and he turned towards the witness, with a wild look, as if aroused out of a sleep. He seemed to be quite bewildered, and to have no knowledge of what they wanted with him. He was by no means capable of signing the will knowingly. Madder, the other witness, says, he did not think, from the situation he appeared to be in when they presented the will, that if he would have to go through what would make him sensible of the will, that he would have been able to sign it. He again says, he did not think he was capable of signing it understandingly, or of directing any person to sign it ; at least he was not so when it was written.

It does not distinctly appear when the uncertainty, of which the witnesses speak, commenced, and that is a fact to which the attention of the jury must be directed. For if a change took place in his intellect before the will was completed and ready for his signature, so as to render him incompetent fully to understand the nature and purport of the instrument, it is not such a testament as is entitled to probate. If a person dies while the instrument is in a

course of preparation, and before its completion, it cannot assume the character of a will. This will not be denied, and what difference can it make, whether he dies, or becomes so debilitated in mind as not to be able to comprehend the nature of the instrument he is required to execute? It must be complete in every respect, save signing, while his mind is in such a state as to enable him to understand whether his directions have been comprehended and faithfully reduced to writing. And this stringent rule is indispensable to prevent fraud, as there would be no check on crafty, designing, and unscrupulous men, if they were permitted to add to the contents of the will, after the mind of the testator was prostrated by disease. It is also necessary to guard against mistake, to which the most accurate are liable in taking down, and reducing to writing, the thoughts and dictations of others, particularly when the difficulty increases by the physical debility of a person in the last stage of disease. It is infinitely better, especially when, as in this country, the law makes an equal and just distribution of the estate, that a person should die intestate, than that we should run the risk of fraud and mistake, which will be the inevitable consequence of a loose construction of the act. It would introduce the very evils which the statute intended to prevent. The court was mistaken in stating to the jury, that inasmuch as it was not questioned that the testator was fully competent to dispose of his estate at the time he gave directions for that purpose, the only question presented for the consideration of the jury in relation to the will, was whether he was prevented by the extremity of his last sickness from signing his name knowingly to the will, or of directing some person to sign his name to it for him after it was prepared for his signature. We submit there was another and an important question to be first disposed of, viz: Whether the testator at the time the instrument was completed and ready for signing, was incapable from mental imbecility of understanding the nature and purport of the instrument he was requested to execute. An opportunity must be given to have the will read and explained to him, which cannot be, if, before it is completed and ready for signing, he becomes incapable of understanding and comprehending the contents. If at the time, or before it is completed, he either dies, or ceases to be able to act understandingly, it cannot be admitted to probate. It is only after the will is perfect in every respect except signing, that the saving in the act can have any operation. If it is proved that after that time, he is prevented from signing by the extremity of his last sickness, or of

requesting some person to sign for him, it is to be considered his will, notwithstanding this defect; cases such as are contemplated in the exceptions may, but will not often occur. It is not to be understood that the testator is required to sign *eo instanti* the will is prepared for signature. A reasonable time will be allowed, and it may be in that interval the testator may cease to have the necessary ability to sign himself, or to direct some person to do it for him. The exertion of mind required to understand the instrument as prepared, in the attempt to sign it, may prostrate the testator in such a way, as to leave the case within the saving of the statute. In such cases, and there are some, it may be admitted to probate without the signing required by the act.

But to bring the case within the exceptions of the statute, strict and stringent proof ought to be required; unquestionably, none was given in this case, for if the evidence is believed, there were intervals when the testator was able, at least, to give directions to others to sign the instrument.

We see no error in the charge, or the answer to the points in relation to the gift of 100 acres, or the alleged sale of 45 acres. The instructions are correct, and the facts are properly left to the jury. Neither is there any error in the admission or rejection of evidence, except in permitting the defendant to give evidence of improvements on the property in dispute, after the controversy commenced. This was clearly erroneous, as there is no principle better than that an owner cannot be improved out of his estate. Improvements give no equity, and evidence of them is improper, because it only serves to create prejudices in the minds of the jurors. It cannot alter the principle, that the materials were purchased before the dispute began.

Judgment reversed, and a *venire de novo* awarded.