## McMahan *versus* McMahan.

Where a parol partition of lands, which had descended to five heirs, was made in the absence of one of them by the other four, and the portions of three of them were set apart by metes and bounds, and at the request of one of the heirs present, the portion of the absent one was added to his, and actual and exclusive possession was taken of the several portions, by those to whom they were allotted—the one who was absent may, after the lapse of sixteen years, at his option, repudiate the division and demand a new partition of the whole tract; or he may adopt all the features of the division, and if it does not overreach mesne rights, acquired by third persons, may recover in ejectment his share of the land from the heir who had it allotted to himself, not however claiming for improvements, made upon the land, since the parol partition.

The statute of frauds is not a bar to a recovery in the case, even though the defendant, in pursuance of an arrangement with his father, had been in possession of *a part* of the land allotted to him by the parol partition *before* the same was made, as his entry on the whole division was made in pursuance of the parol partition.

ERROR to the Common Pleas of *Huntingdon county*.

This was an ejectment by Daniel McMahan against John McMahan, for the undivided half of 56 acres and 80 perches of land.

January 1850—Verdict for plaintiff.

Benjamin McMahan, the father of the parties, died about one thousand eight hundred and twenty-nine, seized of a small tract of land, and leaving surviving him five children, John, Daniel, Benjamin, Sarah and Margaret; Daniel was absent in the west; the four children who were at home desired to have the small plantation divided. John, the plaintiff in error, defendant below, Thomas Bell, the alienee of Benjamin, Sarah and Margaret, procured a surveyor to divide the premises. One fifth of the whole was laid off and taken possession of by Thomas Bell; one other fifth was laid off and taken possession of by Sarah; and one other

fifth laid off and taken possession of by Margaret.　John acting "as agent for Daniel" stating that he had made payment of debts for Daniel, and requesting that Daniel's part should be laid off with his, (John's,) that is, that his and Daniel's should be laid off together.　It was done so, and he has been in actual possession of that part ever since.　He said to the other heirs, he had claims against Daniel, and he would settle with him for his share; he was to stand between the other heirs and Daniel.　A draft was made of the land at the request of the heirs who were present.

Each of the parties took possession at that time of the part thus laid off, and have held it ever since, in severalty.　John had no written authority from Daniel.

This action is brought by Daniel now, and in affirmance of that parol partition he asks John, his assumed agent, to give to him his share, thus set apart, and taken possession of by John, in common with his own.

The main question in the case, being, was the partition thus made binding, if subsequently assented to by Daniel, and is not John estopped from denying that such a partition was made?

The father of defendant died in 1829.

The partition was made in 1830.　It was a parol partition.— John was living on the land, part of which was in dispute when the parol partition was made.　He had taken possession of a part of it, on which his father lived, in the year 1816, under some arrangement with his father, though it did not appear, that there ever had been any line run, between the part cultivated by him and his father.　Nor did the evidence establish the precise limits, up to which, John claimed exclusive possession, except so far as appeared, by his occupancy of his house, barn, stable, garden, and the necessary ground around, together with a wagon maker's shop, and the use of the spring at some distance from his house; but his exclusive possession and residence, with his family, horses, cattle, &c. had been continued from the time he built his house until the institution of this ejectment.

It appeared that the father said he had given John *a piece* of the land, on which he was living, to put his buildings on.　That John had built on it a house and barn and made other improvements and paled in a garden.　He farmed part of the place.　A witness testified, "I cannot say I ever heard John say he claimed the land, or that he pretended to claim it."

Benjamin McMahan testified that he was the agent of Daniel. He sent him a power of attorney; he got it some three or four years ago.　That he called on John, before the beginning of this suit; told him he would take 25 or 30 acres of the land, and give him his buildings.　He, (John) said he would not give one acre.

The court, WILSON, President, *inter alia*, charged the jury:

The partition or division, is not alleged to be in writing, the

whole was done by parol; and under the rigid requirements of the statute, would not be valid, although Daniel afterwards assented to it.   But in our mixed administration of law and equity, this rigid rule of construction has been relaxed, and it is now too well settled to be shaken; that where there has been a voluntary partition of lands by tenants in common, who derive their title by descent, when fair and equal, and exclusive possession taken and continued by each of his respective property, under the division made by them, with fixed boundaries, run and marked on the ground, equity will interfere and hold the parties to the partition, so made.

If you find that a partition of the property was made by John, Sarah, George Bell, and his wife, and Thomas Bell, who had the interest of Benjamin; that John undertook to the other heirs, for Daniel's agreeing to the partition which they made ; that the lines were run, and marked on the ground ; that the four severally took exclusive possession of his part, under such division, and have continued such possession ; that John took possession of the 56 acres and 80 perches, for his and Daniel's share ; that Daniel subsequently sanctioned the arrangement made for him, by John ; and that John has before the bringing of this suit, denied the right of Daniel to his share being in the 56 acres and 80 perches ; this action would lie, and Daniel be entitled to recover the undivided half of the 56 acres and 80 perches, unless he should be defeated on the other ground taken by the defendant.

The defendant further alleges that he was the owner, by a parol gift from his father; on adverse possession of a portion of the land for 21 years.   To establish a title by gift, the same requisites that we have before referred to, are required to be shown by the party claiming under such gift, to take his case out of the operation of the statute of frauds.   The party claiming, must show what land was given to him ; how much, and what were the boundaries.   There must be such evidence, as to what were the boundaries, that from the clear testimony a deed could be drawn, fixing to a common and reasonable certainty, the boundaries and quantity of the land given ; and that a possession was taken accordingly, in pursuance of the gift.   Is there any evidence that there was a gift ?   If there is, has the defendant shown the extent of it, and the boundaries in any way designating the lines, to which the gift extended.   We do not see any thing in the evidence to warrant such conclusion; and without some evidence to establish these facts, the inference of a gift by which the defendants could hold, is not to be made against the requirements of the statute of frauds.

At the trial, the jury first returned a written verdict as follows: "We all agree that the said Daniel McMahan is to have 28 acres and 40 perches of the two-fifths of the land now in possession of John McMahan, so as to let John McMahan have all his buildings

[McMahan *v.* McMahan.]

on the said John's part, and neither of them to pay any thing for rent or judgments."

This verdict the court rejected, and sent the jury back. The jury then returned the following verdict in writing:

"We find for the plaintiff the one half of the undivided two-fifths, so as to leave the buildings on the defendant's part, and neither to pay any back claims or rents."

The court asked the jury if by the two-fifths, the 56 acres and 80 perches described in the writ, was intended. They said they did, and the court so directed the verdict to be entered. The prothonotary then entered the verdict as follows: "The jury respectively do say they find for the plaintiff, the one undivided half of the 56 acres and 80 perches, so as to leave the buildings on defendant's part, and neither party to pay any back claims or rents." On which verdict so entered the court rendered judgment.

Defendant's points:

The court is requested to charge the jury, that under the evidence in this cause, there was never any valid partition of the real estate of Benjamin McMahan, Sen.

To 1st. We refuse to answer this point, as matter of law, as requested.

2d. That one tenant in common cannot sustain ejectment against one of several of his co-tenants.

3d. That there can be no valid partition amongst tenants in common, to bind them all; unless the share of each one has been set apart in severalty from each other and from all the others.

Answer—To the 2d. This general principle is correct. But not so when one of the tenants in common is ousted by the other, or his right to a portion of the land, denied by the one in actual possession; he may have such action to establish his right before he resorts to his partition.

To 3d. We refuse this answer as requested. There may be partition by two or more heirs, agreeing to take their shares together, and having it so laid off to them.

A number of specifications of error were filed, part of which were—

The court erred in telling the jury that although Daniel, the plaintiff below, was not present at the time of the alleged partition, and knew nothing about, and was not bound by it, or by the acts of John (in 1830); yet if afterwards, at the end of sixteen years, in 1846, Daniel thought proper to assent to the arrangement made for him by John, it would be inequitable in John to disaffirm his own agreement, and compel Daniel to resort to the other heirs for a recovery of his interest in the estate.

The court erred in that part of the charge relating to ratification.

The court erred in that part of the charge beginning with, "If you find that a partition of the property was made by John, Sarah, George Bell and his wife, and Thomas Bell," and ending with the words, "fifty-six acres and eighty perches."

The court erred in saying to the jury that if the plaintiff was not entitled to the undivided half of the fifty-six acres, still he might recover the undivided fifth of fifty-six acres, eighty perches.

The court erred in answering the first, second and third points of defendant's counsel.

The court erred in charging the jury that the defendant below was answerable to the plaintiff for the rents and profits of the land claimed by the plaintiff.

*Fisher* for plaintiff in error, John McMahan.—That the parol partition contended for was invalid by the statute of frauds and perjuries, as possession was not taken, in pursuance of the partition, John having been in possession, *before* the partition was made: 3 *S. & R.* 543; *Story's Eq.* sec. 762–3. That if the partition was not binding, then the claim of Daniel was to one-fifth part of the whole land; and in that event, all of the heirs should have been joined in the suit: 9 *Mass. Rep.* 34; 1 *Ch. Pl.* 83–5; 5 *T. Rep.* 651; *Roscoe on Real Actions,* 9, *Vin. Abt. Parceners.*

*Benedict* and *Orbison* were for defendant in error, whom the court did not hear.

The opinion of the court was delivered by

BELL, J.—The proof is plenary, and the jury has found, in accordance with it, that, in the year 1830, all the parties holding an interest in the real estate which was of Benjamin McMahan, the elder, (excepting his son Daniel) made a parol partition of it, by which the portion of each was set apart by metes and bounds, distinctly marked on the ground, save the purparts of John and Daniel, and these, at the instance, and in pursuance of the express request of John, were thrown together in common. This partition was followed by actual possession, each tenant entering on the part allotted to him—John holding the only undivided portion in his own right, and as the representative of his absent brother, Daniel.

Had the latter been present and actually assenting to this proceeding, no question could be admitted of its entire validity; for it is long since settled that such a division, if fair and equal, executed by a corresponding possession, is good, though some of the tenants be under coverture, and others of them elect to hold their purparts, as before, by community of possession: *Litt.* sec. 250; *Co. Litt.* 169, *a,* 180, 267, *a;* Doctor *vs.* Priezt, 2 *Stra.* 783; Ebert *vs.* Wood, 1 *B.* 216; Barrington *vs.* Clark, 2 *P. R.* 115;

3 *Burr.* 1801; Calhoun *vs.* Hays, 4 *W. & S.* 127; *Act of 5th Feb.* 1821; *Alnatt on Part.* 15, 20.   The effect of such an election is to continue the relation before subsisting between all who join in it, while the other parties are constituted tenants in severalty, by an act so unequivocal that the law finds no danger in recognizing and sanctioning it.

But Daniel was neither present nor assenting to the arrangement made by his brethren; nor had he authorized John to represent him in the transaction.   He was, consequently, not bound by it, and might, at his option, repudiate it, by demanding a new partition of the whole tract, irrespective of the former division, and regardless of the long continued possession under it.   On the other hand, he may adopt all the features of that division, by the simple recognition of the acts done by John, in his name; for the maxim is, that subsequent assent to an assumed agency is equivalent to a precedent authority.   By such ratification, the doings of the self-constituted agent become, in contemplation of law, the acts of the principal, with all the consequences that follow the same act done by previous authority; unless, indeed, it might operate to over-reach and defeat *mesne* rights acquired *bona fide*, by third persons, or subject them to some loss or penalty, to which, otherwise, they would not be liable: Clark's Executors *vs.* Van Riemsdyk, 9 *Cranch*, 153, 161; Delefield *vs.* The State of Illinois, 26 *Wend. Rep.* 193, 226; Wilson *vs.* Tammon, 6 *Man. & Gran.* 236, 244; Hinman *vs.* Cranmer, 9 *Barr*, 40; 1 *Am. Lea. Ca.* 420, *et seq.* in note; an effect which cannot be attributed to the ratification in this instance—evidenced by the institution of the present action.   On the contrary, its result is to fortify and establish rights founded in the participation of the agent, and which he is now attempting to destroy.

It is, however, objected there is no evidence that John assumed to act as Daniel's representative; or if he did, there was no entry by him, in pursuance of the partition; and consequently, so far as he is concerned, it is within the statute of frauds.   But the plaintiff in error is mistaken in both these points.   The evidence is full, that, asserting an assumed obligation to pay certain debts due from Daniel, wherefore he had an interest in Daniel's share of the land, as security for the proposed outlays, John, acting as the agent of Daniel, preferred a request that the purpart of the latter should be laid off in connection with his own share.   This was acceded to by the other owners, on his promise to stand between them and Daniel—a promise in which they seem to have put the fullest reliance when carrying out the family arrangement.   This of itself is sufficient to estop John from pursuing his present purpose to impeach the partition, on the ground of Daniel's non-participation in it; for admissions or assertions that have been acted on by others, are conclusive against the party making them, and

[McMahan *v.* McMahan.]

will bar every attempt to erect a defence upon their alleged falsity: 1 *Green. Ev.* secs. 207, 208. Indeed, John seems to have been the principal actor in bringing about a division of his father's land, from which, doubtless, he promised himself an advantage; and yet, strangely enough, he now assumes towards it an attitude of hostility, not because his brother repudiates it, but in an effort to defeat his assent to it; and this, too, upon, to me, the incomprehensible notion that by *laches*, which consists only in permitting John to enjoy the occupancy of his brother's share for a series of years, the latter is forbidden to confirm the acts of the former by some unexplained equity residing in the *quondam* agent.    Had Daniel, after the lapse of time which has intervened here, attempted to reverse the partition made, in his absence, by his brothers and sisters, and thus grasped at a share of the improvements made by each of them on their several allotments, I could have imagined the ground of inequity charged against him; but I am totally at a loss when the accusation is made to rest on his full recognition of their acts, and his disclaimer of all right to participate in their improvements.    I cannot avoid adding that, in this business, so far as we may judge from the record, John stands in a most unamiable light.    He has been permitted to enjoy, for years, the patrimony of his brother, specially set apart on his own suggestion and assumption of creditorship; and now, when the long absent re-appears to claim his right, subject to the arrangements made for him, and under the conception of every just demand residing in the agent, he is told that the only path to a successful vindication of his title lays over the ruins of a family compact, in the faith of which his relatives have lived and died. I cannot but rejoice that we are not compelled, by any abstract rule of law, to countenance a proposition so fraught with injustice, not only to the plaintiff below, but also to those who have expended their means in full reliance upon the promises of the defendant.

The attempted interposition of the statute of frauds is also without effect.    Even admitting an actual entry by the defendant, upon the purparts allotted to him and Daniel, was necessary to consummate the partition—a position I by no means concede—we have here ample evidence of such exclusive occupancy.    True, the defendant had a foothold, in his father's time, and by his permission, in a small portion of the tract; but it was not until after the partition made, he entered upon the enjoyment of the whole fifty-six acres, thirty perches; and it is not denied that this entry was by virtue of, and in conformity with the partition.    Besides, John's prior restricted occupancy, on the death of his father, assumed the condition of a possession in common with the other tenants—*per my et per tout;* and his subsequent distinct holding is referable alone to the actual division then made.    The case

[McMahan *v.* McMahan.]

is, therefore, strictly within the rule which looks to part performance of an oral contract touching the title of lands, as essential to found a claim for a specific performance of it.

At the time, then, of the institution of this suit, all the owners of this tract of land stood in the relation of tenants in severalty, in respect to each other, except John and Daniel, who, by their own choice, continued to be tenants in common of that portion assigned to them. As a necessary consequence, the objection that this action should have been brought against all of the heirs, fails with the assumption of a continued joint holding, upon which it is bottomed. The joint possession having been severed by a valid act, and John being thus left in the position of one tenant in common claiming in exclusion of his fellow, is subject, alone, to the suit of the excluded tenant. That this suit may be by an action of ejectment, after a simple denial of his right to participate in the enjoyment of the land, upon the doctrine of constructive ouster, is established by Law *vs.* Patterson, 1 *W.* & *S.* 184, and many other precedents.

What the court said to the jury on the subject of Daniel's right to defalk the profits received by John, against the amount of debts paid by the latter for the former, is quite correct. Indeed no exception was taken to it on the argument.

The bills of exception to evidence are subordinate to the general principles already discussed, and are ruled by them. There is nothing in any of the bills requiring distinct discussion.

By moulding the verdict so as to meet the facts of the case and the ascertained conclusions of the jury, the court did no more than was incumbent on it to do. What was said of "back claims or rents" may, if necessary, be rejected as surplusage, though I, by no means, intend to say this is essential. By the record it appears the judgment was entered omitting that portion of the verdict.

The errors assigned, and not specifically noticed, were, very properly, not urged on the argument.

Judgment affirmed.

Coulter, J., dissented.