GILFILLAN, Appellant, v. SCHALLER, Respondent.

(144 N. W. 133.)

**1. Appeal—Sufficiency of Evidence—Review—Record.**

The Supreme Court cannot consider the sufficiency of the evidence to support findings, where it does not affirmatively appear, from appellant's brief, that it contains a statement of all the material evidence received on the trial, as required by Supreme Court Rule 6 (140 N. W. viii), and Laws 1913, Ch. 172.

**2. Frauds, Statute of—Sale of Realty—Agreement Upon Method of Acquiring Title.**

Testator having conveyed a quarter section of land to his wife, which he had previously willed to defendant with another quarter section of which testator died seized, subject to payment by defendant out of said property of certain sums to testator's other children, including plaintiff, defendant refused to accept the provisions of the will unless he could have both quarter sections, and, testator's wife being then dead, it was orally agreed by plaintiff and the other heirs, with defendant, that he should have both quarters, and should acquire title to the quarter which testator had conveyed, by foreclosing a

mortgage thereon which had been assigned to testator in his lifetime and belonged to the estate, of which defendant was executor, and buying in the property for his, defendant's individual benefit. Held, that such agreement between the heirs was not for a sale of realty, or an interest therein, within the meaning of Sec. 1238, Civ. Code, subd. 5, but was rather one as to the method by which one party thereto should acquire title to the property.

3.  Estoppel—Estoppel in Pais—Agreement Between Heirs—Title to Realty.

Testator devised two quarter sections of land to defendant, subject to his paying certain sums to testator's other children, including plaintiff; but, testator having conveyed one of the quarter sections in his lifetime to his wife, who had also died, defendant refused to take under the will unless he could obtain both quarter sections, for which purpose it was orally agreed by plaintiff and the other heirs, with defendant, that he should have both quarters and should acquire title to the one conveyed, by foreclosing a mortgage thereon belonging to the estate. On the faith of the agreement, he foreclosed the mortgage, bought in the property individually, probated his father's estate, paid the expenses and the bequests to plaintiff and other heirs, and later made valuable improvements on the property, of which facts plaintiff had knowledge, she for six years making no claim of interest in the land. Held, that she was estopped to claim that the agreement was void and that defendant, by purchasing the land under the foreclosure sale, became a trustee thereof for the heirs.

4.  Equity—Laches.

Plaintiff, having made no claim to the land, in which she now seeks to have decreed to her an interest, for nearly six years, after making an oral agreement which defendant, a party thereto, carried out by, among other things, making valuable improvements thereon to plaintiff's knowledge, was barred from relief by laches.

5.  Specific Performance—Part Performance of Oral Agreement—Evidence—Prevention of Fraud.

Though an oral agreement between heirs be regarded as within the statute of frauds for sale of an interest in realty, evidence of its terms and the fact that defendant, a party thereto and relying thereon, had accepted his father's will, performed the conditions thereof, acquired title to the land through foreclosure of a mortgage thereon belonging to the estate, pursuant to the agreement, and constructed permanent improvements on the land aggregating $4000 in value, to the knowledge of plaintiff, a party to the agreement, was admissible and material to show part performance which would entitle

defendant to specific performance of the contract, under Civ.
Code, Sec. 1311, and remove same from the operation of the
statute; and to hold that such evidence was incompetent would
be, in effect, to render the statute an instrument of fraud.

(Opinion field December 5, 1913.)

Appeal from Circuit Court, Beadle County. Hon. ALVA
E. TAYLOR, Judge.

Action by Caroline Gilfillan against Ralph A. Schaller, to
set aside a foreclosure of a mortgage upon realty, adjuding de-
fendant to be a trustee for plaintiff as to an interest therein,
and for damage for use and occupation. From a judgment for
defendant, and from an order denying a new trial, plaintiff ap-
peals. Affirmed.

*Harry Kunkle,* and *Ernest D. Ede,* for Appellant.

"The agreement in question, being oral, is void."

The pretended foreclosure of said assigned mortgage on
the property of Mary D. Schaller was null and void.   .

The attempted distribution of the real property of Mary
D. Schaller, deceased, by the county court of Beadle County,
was nugatory and absolutely void.

The defendant is a trustee for the benefit of all the heirs of
Mary D. Schaller for such portion of said premises as descended by
statute to the heirs of Mary D. Schaller, and such portion fur-
ther of the same as was devised to the said heirs in the last will
and testament of John C. Schaller or descended to said heirs by
law as heirs of John C. Schaller. Smith v. Daniel, 16 Am.
Dec. 641; Tisdale v. Tisdale, 64 Am. Dec. 775, and notes fol-
lowing; Weaver v. Wible, 64 Am. Dec. 696.

The defendant herein is liable to the cotenants for the rents
and profits of said premises of Mary D. Schaller since he came
into possession of the same upon the death of the tenant for
for life, John C. Schaller.

In reply. Without an actual contract in the premises, there
can be no equitable estoppel where the truth is known to both
parties, or where each have equal means of knowledge. 16 Cyc.
741. Respondent does not claim that in making the improve-
ments upon the real estate in question he relied upon the rep-
resentations of the appellant to the effect that respondent had
title thereto. Steele v. Smelting Co., 106 U. S. 456.

*W. A. Lynch,* and *Lyman T. Hinckley,* for Respondent.

On the ground of equitable estoppel, the plaintiff cannot recover in this action. After this title was secured as stated, the defendant went on and made valuable improvements on the southwest quarter of Section 11, to the full value of at least $4,000. Defendant paid the taxes year by year on the land and exercised absolute and complete dominion over the property to the exclusion of this plaintiff and anybody else. The plaintiff was a constant visitor at his house; she knew just what was going on; she saw these improvements made year by year; knew that the defendant was resting in the belief that he was the absolute owner of this land; knew that he was paying the taxes on it; she had accepted her legacy under the will and had manifested throughout, from the time of the first step taken in the probate proceedings to the time this suit was instituted between six and seven years, not the slightest interest in this property, nor intimated in any wise to the defendant that she claimed or pretended to claim or had any interest whatever in it. Kenny v. McKenzie, 127 N. W., 597 S. C., 120 N. W. 781. Grigsby v. Lawson, 124 N. W. 856; Farr v. Semmler, 123 N. W. 836, and cases cited; Diamond v. Manheim, 63 N. W. 495; Bausman v. Kelley, 36 N. W. 334. She does not offer to restore to the defendant a proportionate value of the improvements which defendant has placed upon these premises, nor to refund to him the taxes he has paid.

WHITING, P. J.   Plaintiff brought this action in October, 1910, and sought a decree of the circuit court vacating and setting aside a foreclosure of one certain real estate mortgage, under which foreclosure defendant claimed to have become the owner of a certain quarter section of land situate in Beadle county, S. D.; adjudging defendant to be a trustee holding the title in and to a two-fifteenths undivided interest in such real estate for and on behalf of plaintiff; and granting a recovery of damages for the use and occupation of said property.

The cause was tried to the court without a jury, and the court made findings of fact which, so far as material to this decision, were in substance as follows: One John C. Schaller

was the United States patentee of the quarter section in question. He resided thereon until the year 1900, when he leased this quarter, together with an adjacent quarter, to his son, the defendant. Schaller then moved to Iowa, where he died testate in February, 1902. He exercised acts of ownership over said premises constantly and paid taxes thereon and treated the same in all respects as his own land until his death. John C. Schaller owned the other quarter section of land above mentioned, which he used in connection with the first quarter as one farm. By his will John C. Schaller devised both of said quarter sections of land to the defendant, subject to the payment by defendant out of his own property, of certain sums, to the other children of the deceased, one of whom is the plaintiff and appellant herein. In said will defendant was appointed one of the executors. In December, 1887, John C. Schaller and his wife executed a mortgage upon the quarter section of land involved in this action; the same securing the payment of $500. In 1888 John C. Schaller conveyed the said quarter section by warranty deed to his said wife, which deed was filed for record and recorded in the office of the register of deeds of Beadle county. In 1896 the mortgagee named in the mortgage assigned the mortgage and the note secured thereby to John C. Schaller, which assignment was placed of record. The wife of John C. Schaller died in 1893, never having exercised any acts of ownership over the land in question, and none of the children had any actual knowledge that the title to the said quarter section had been conveyed to their mother, until they received notice thereof after the death of their father. After the father's death, an attorney having been employed to probate his estate, it was discovered that the title to said quarter now in controversy stood in the name of the mother. Probate proceedings were commenced upon both estates. Soon thereafter, being some time in the year 1902, upon the advice of the attorney, all of the adult children of John C. Schaller assembled at the home of the defendant—which was upon the quarter now in controversy—for the purpose of considering the situation of said estates. Defendant advised the other heirs that he was not willing to accept the provisions of the will unless he could acquire title to both tracts of land, for the reason that the sum

he would have to pay in bequests exceeded by several hundred
dollars the value of the one quarter section of land standing in
their father's name. It was then agreed by and between the
several heirs—one being the plaintiff herein— that the will
should stand and its provisions be carried out the same as if
John C. Schaller had been invested with the title to both
said tracts of land as assumed in said will; that defendant
should pay all the expenses of probate and pay the legacies to
each heir, as provided by the terms of said will; and that he
might utilize the mortgage held by said John C. Schaller with
which to invest himself with the title to the quarter described
therein.

From the time of such agreement no further proceedings
were had in the probate of the mother's estate, but the will
of John C. Schaller was established and administered in ac-
cordance with its terms and in accordance with the
aforementioned agreement entered into by the said
heirs. Final account in his estate was presented and
approved and a decree of distribution was entered in April, 1904,
which decree purported to set over both of the quarter sections
to defendant, which decree recited that the devise of this land
had been made subject to the payment of these several be-
quests and that such bequests had been paid and vouchers filed
therefor. Due notice of the proceedings in the administration
of the estate of John C. Schaller was had by the several heirs.
One of the said quarters was appraised, in the probate pro-
ceedings, at $750; the other—the quarter now in controversy—
was worth, at that time, not to exceed $1,050.. The plaintiff
accepted from defendant the payment of the amount she was
to receive from him under the terms of the will, receiving the
same prior to the entry of said decree of final distribution, and
she has never returned nor offered to return the same, nor did
she offer, in her complaint to allow it to be applied upon the
claim for money damages she made therein. Defendant, as ex-
ecutor of his father's estate, proceeded to and did, in March,
1903, foreclose by advertisement, the said mortgage hereinbe-
fore mentioned, and, at the foreclosure sale, bid in the said land
in his private capacity and not as executor, and afterwards took
out a sheriff's deed; such foreclosure being made and the title

to said land taken by defendant in pursuance of the under-
standing and agreement between him, the plaintiff, and the
other heirs of said estate and for the express purpose of in-
vesting a complete title to said premises in defendant.    From
the time of entering into the agreement and receiving payment
of the amount of her bequest, plaintiff was, up to the time of
bringing this action, a frequent visitor. at the home of defend-
ant upon the land in question, and was thus fully aware of the
improvements made upon said land by defendant.    She never
intimated to defendant any dissatisfaction, · but at all times
acquiesced in the execution of the will and the way the matter
had been arranged.    Between the time of the entry of said
decree of distribution above mentioned and of the bringing of
this suit, and with the knowledge of plaintiff, defendant paid
the taxes on said land and made, in the way of buildings and
otherwise extensive improvements thereon, which improvements
aggregated in value the sum of $4,000; and the land also great-
ly increased in value through the natural rise in value of farm
lands in South Dakota.

The court found that plaintiff was estopped from making
any claim to the premises, and it entered a judgment denying
her the several reliefs asked for.    From such judgment and an
order refusing a new trial, plaintiff appeals to this court and
assigns as error: That certain of the findings are wholly with-
out evidence to support same; that the court erred in denying
plaintiff's motion to strike from the record all evidence of
any oral agreement entered into betwen the heirs of John C.
Schaller; that the court erred in denying plaintiff's motion to
strike from the record all evidence as to the value of improve-
ments made upon the land in controversy, or the rents and
profits derived therefrom; and that the court erred in de-
nying plaintiff's motion for a new trial.    The last assignment
presents no question not presented by the other assignments.

[1]    This court cannot consider the sufficiency of the ev-
idence to support the findings, as it does not affirmatively ap-
pear from appellant's brief that such brief "contains a state-
ment of all the material evidence received upon the trial," as
required by rule 6 of the Supreme Court Rules (140 N. W.
viii), and by chapter 172, Laws 1913. As a fact it affirmatively

appears that such brief does not purport to contain all such
evidence.

Appellant contends that the agreement entered into among
the several heirs, which was, as the record shows, oral, was
invalid under subdivision 5, § 1238, C. C., providing that "an
agreement * * * for the sale of real property, or of an in-
terest therein, * * * " shall be invalid if not in writing signed
by the party to be charged. Appellant has not assigned the in-
sufficiency of the findings to support the conclusions and judg-
ment and therefore concedes that, if such agreement had been
in writing and signed by her, and therefore binding upon her,
she could not now question respondent's title acquired in ac-
cordance therewith. She contends that, this agreement being
void, the foreclosure and probate proceedings must all be treat-
ed as though they had been conducted by respondent without
appellant's consent; that the part of the decree of distribution
setting over to respondent land not belonging to the father's
estate was a nullity; that respondent, as the executor of the
father's estate, held the mortgage as a trustee for all the heirs, and
therefore, though he bid the land in in his own name, holds
title thereto as a trustee for all the heirs and is bound to ac-
count as such; and that, as a matter of law, the mortgage ceased
to have any validity upon its assignment to the mortgagor. Ap-
pellant cites numerous authorities in support of her conten-
tions, none of which demand our attention if her motion to
strike out the evidence of this oral agreement was properly
overruled by the trial court.

[2] Was the oral agreement one "for the sale of real
property, or of an interest therein?" We think not. There is a
wide distinction between an agreement for the sale of real
property and an agreement as to a method by which one
party to such agreement should acquire title to real property.

[3[ The heirs, understanding the exact situation, but de-
siring to have the terms of their father's will carried out, elect-
ed to treat this land as a part of their father's estate and the
ownership thereof as having vested in defendant subject to the
provisions of the will as to payments of bequests to the heirs.
They agreed upon the foreclosure of the mortgage as a method
by which defendant might acquire the legal title to said land.

Certainly when defendant, relying upon such agreement paid the several bequests, and probated his father's estate, paying the expenses thereof, he became vested, as against the heirs who were parties to the oral agrement, with an equitable title in and to said land, and therefore fully entitled, as against such heirs, to be invested with the legal title thereto. Defendant having, in accordance with the agreement entered into with plaintiff and for the purpose of effecting in part the end sought by such agreement, acquired what purported to be the legal title to such land, such plaintiff should be forever estopped from questioning the validity of such legal title and from claiming any rights thereunder.

[4] Such right of estoppel, if it needed any strengthening, was certainly made unquestionable by the laches of plaintiff, who in apparent acquiesence in defendant's claim of title, stood by for the period of some six years and, without making any claim to an interest in said land, allowed defendant to put valuable improvements thereon. One can hardly imagine a case that would more strongly appeal to a court of equity and lead it to decree an estoppel. It was upon the theory of estoppel that the answer herein was interposed; it was upon that theory that the evidence of the oral agreement and of the improvements made by defendant was offered and received; and it is clear that the evidence of such agreement and of all that was done thereunder was both competent and material. The court did not err in refusing to strike out such evidence.

[5] Even if the agreement entered into by the parties hereto could be construed, as appellant apparently would construe it, as an agreement for the sale of an interest in the said real property, yet under the ruling of this court in Jones v. Pettigrew, 25 S. D. 432, 127 N. W. 538, it is clear that, in order for respondent to show not only an oral agreement but also such partial performance thereof as, under section 1311, C. C., would entitle him to the specific performance thereof, it was competent for respondent to prove such agreement and everything that was done upon the strength thereof, and after such evidence was received it could not properly be stricken out unless, under all the evidence received, it did not appear that there was a sufficient "part performance" to validate the other-

wise invalid agreement.  That the facts proven in this case
would have entitled respondent to a specific performance of the
oral agreement, if such agreement had been one under which
the other heirs agreed to convey to him their interest in said
land, is sustained by the following authorities, wherein the opin-
ions were based upon acts of part performance peculiarly analo-
gous to those in the present case: Phillips v. Jones, 79 Ark.
100, 95 S. W. 164, 9 Ann. Cas. 131; Pfiffner v. Stillwater, etc.,
23 Minn. 343; Edwards v. Fry, 9 Kan. 417; Fisher v. Moo-
lick, 13 Wis. 321; Tate v. Jones, 16 Fla. 217; Brown v. Jones,
46 Barb. (N. Y.) 400; Aurand v. Wilt, 9 Pa. 54. See, also,
Pomeroy, Specific Performance of Contracts, § 124, and Story,
Eq. Jur. § 763.  In 36 Cyc. 642, it is said: "It has been a fun-
damental principle of the courts of equity from the beginning,
in dealing with the statute (of frauds), that it shall not be made
the means of committing a fraud, especially as its expressed pur-
pose was the prevention of a large class of frauds and per-
juries."  And in Browne on Frauds, § 448, it is said: "The
doctrine of equity in such cases is that where an agreement has
been so far executed by one party, with the tacit encouragement ·
of the other, and relying upon his fulfillment of it, that, for
the latter to repudiate it, and shelter himself under the pro-
visions of the statute, would amount to a fraud upon the for-
mer, that fraud will be defeated by compelling him to carry
out the agreement."

Certainly the facts proven herein being such that a court
of equity, in order to prevent the statute of frauds from be-
coming an instrument of fraud, would be bound to declare that,
treating the agreement as one to sell land, there had been such
a partial performance as would take such agreement out of the
statute of frauds, such court committed no error in holding
these same facts sufficient to work an estoppel against plaintiff,
or in refusing to strike from the records the evidence in support
of such facts.

The judgment and order appealed from are affirmed.