## Jordan et al., Appellants, *v.* Jordan.

*Ejectment—Title—Parol contract for the sale of real estate—Im-
provements—Payment of consideration—Statute of frauds—Time of
taking possession and making improvements—Evidence—Improve-
ments susceptible of compensation—Relationship of father and son.*

In an action of ejectment for a house and lot, instituted by five

plaintiffs against their brother, the plaintiffs claimed under the will of their father by which the property was devised to them in equal shares. Defendant claimed under a parol agreement of sale to him by his father, part payment, tender of balance, and possession and improvements. The father who died in 1925, purchased the property in 1916.

A paper was executed by the father in July, 1921, in which he acknowledged the receipt of Fifty Dollars, "in first payment of property and furniture." Below the signature were the words "Price agreed $2600." A substantial dispute between the parties to the contract as to what furniture was to be transferred with the land for the Twenty-six Hundred Dollars was shown by the evidence. Immediately after its execution, the paper, together with the deed of 1916, was delivered to defendant, at which time both parties were in possession of the premises. Shortly thereafter the father refused to execute a deed for the real estate, and also refused to accept Twenty-five Hundred and Fifty Dollars tendered in payment of the balance of the purchase price. In August, 1921 the father wrote the defendant a letter, in which he specifically set forth the terms under which he would execute a deed for the premises, and asked for a reply within ten days. There was no evidence that defendant did anything in response to the letter. Later the defendant improved the real estate, which improvements were susceptible of compensation.

In such case defendant's claim failed because (a) there was no proof of what was to be delivered for the $2600.00, '(b) no evidence that possession of the land was taken pursuant to the parol contract, and (c) the improvements were made after notice of repudiation of the transaction, and were susceptible of compensation.

When an attempt is made to set up a parol contract of sale of real estate against a father by his son, the evidence of the contract must be direct, positive, express and unambiguous. In such case clearer and stronger evidence is required of the father's intention to part with his dominion over, and ownership of, the property, than is required in cases of parol contracts between strangers in blood.

In order to take a parol contract for the sale of lands out of the operation of the statute of frauds, it must be shown that possession was taken in pursuance of the contract at or immediately after it was made. Evidence of possession taken before the alleged parol contract is not sufficient.

Improvements made after notice by a proposed vendor that he would not perform an unenforceable agreement are insufficient to sustain an equitable title. Also, to sustain such title the evidence must show performance or part performance by the vendee which could not be compensated in damages and such as would make rescission inequitable and unjust.

Tenants in common may maintain ejectment against their cotenant who has ousted them.

Argued April 17, 1928. Appeals Nos. 1478, 1479 and 1485, April T., 1928, from judgment of C. P., Cambria County, December T., 1925, No. 530, by William O. Jordan, Samuel C. Jordan and John Lloyd Jordan, in the case of William O. Jordan, Elizabeth Shaw Oswalt, Dora B. Arnold, Samuel C. Jordan and John Lloyd Jordan v. James H. Jordan. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Reversed.

Ejectment for a house and lot. Before McCANN, J.

The following letter was addressed to defendant by his father:

"Wilmore, Penna.,
R. D. No. 2,
August 25, 1921.

Mr. James H. Jordan, Sir:

I have decided in regard to the sale of my property and furniture that I will make or cause to be a deed for you upon full payment of said property and furniture, with the surrender of my clothing and balance of my bedroom furniture and relics and dishes and my books and one bureau, the property of Mrs. Elizabeth Oswald, one grafanola, the property of John L. Jordan, and one piano and bookcase, the property of Samuel Jordan, Jr., and the property of Daniel Jordan, a gift from his mother, and others that was left at home, as I had not handled all the business while my wife lived and I did not think of the property as you know that your mother was holding or careing for the children's property, as I have decided I need a reply within ten days and deem it necessary.

Your father,

his
Samuel Jordan, Sr.   X
marks.

Witness:
George F. Parkinson,
John P. Quinn."

Other facts appear by opinion of Superior Court.

Verdict for defendant, conditioned on paying plaintiffs the unpaid balance of the consideration. William O. Jordan, Samuel C. Jordan and John Lloyd Jordan appealed.

*Errors assigned,* among others, were to the refusal of plaintiffs' motions for judgment non obstante veredicto, and for a new trial.

*I. Morton Meyers,* and with him *Graham & Yost,* for appellants.

*Morgan W. Evans,* for appellee.

OPINION BY LINN, J., July 12, 1928:

In October, 1925, five plaintiffs brought ejectment against their brother for a house and lot, averring title in them under the will of their father, Samuel Jordan, deceased. Defendant claimed under a parol agreement of sale to him by his father, part payment, tender of balance, possession and improvements alleged to be sufficient to take the case out of the statute of frauds: March 21, 1772, 1 Sm. L. 389. He has judgment conditioned on paying plaintiffs the unpaid balance of the consideration, $2,550. After trial two plaintiffs accepted payment of $510 each from defendant; the other three took these appeals. The assignments of error are to the refusal of their motions for binding instructions, for judgment n. o. v. and for a new trial. The court below was of the opinion that defendant made out a case that would require a chancellor (King v. King, 273 Pa. 351, 353) to grant him relief; appellants stand on the contrary contention.

As the parties to the parol contract were father and son, "clearer and stronger evidence is required of the father's intention to part with his dominion over, and ownership of, the property, than is required in cases

of parol contracts between strangers in blood .... .. .
When an attempt is made to set up a parol contract
of sale against a father, either by his son, or one claim-
ing under the son, the evidence of the contract must
be *direct,* positive, express and unambiguous": Ack-
erman v. Fisher, 57 Pa. 457, 459; Breniman v. Breni-
man, 281 Pa. 304, 306; Rader v. Keiper, 285 Pa. 579.
That burden of proof was on defendant.

In 1916 Samuel Jordan purchased the real estate in
dispute. He died February, 1925, testate, devising to
the five plaintiffs in equal shares the residue of his
property remaining after payment of his debts and
three pecuniary legacies of $1 each, one of the'se lega-
cies being given to defendant.

Plaintiffs made out a prima facie legal title by put-
ting in evidence the deed to their testator and the pro-
bated will. The defense was two-fold: 1. Defendant
held under a writing from his father delivered in 1921.
2. If that writing was insufficient, the statute of frauds
was, nevertheless, satisfied by part payment, tender
of balance, possession and improvements. As defend-
ant in the brief filed in this court now agrees that the
writing itself was insufficient under the statute of
frauds, we need consider only the second position.

July 5, 1921, Samuel Jordan, then about 86 years of
age, with his mark executed a paper stating: "This
is to certify that Samuel Jordan has received pay-
ment of $50 (fifty dollars) in first payment of prop-
erty and furniture, with the exceptions of furniture ·
belonging to Samuel Jordan, Jr., and one bureau be-
longing to Elizabeth Oswalt"; below the signature
were the words, "Price agreed $2,600." The evidence
shows a substantial dispute between the parties to the
contract as to what furniture was to be transferred
with the land for the $2,600.

The paper, with the deed of 1916 by which Samuel
Jordan held the house and lot in dispute, was delivered
to defendant immediately after its execution. The tes-

timony does not specify the date when defendant took possession of the real estate; the house is referred to in the evidence as being the home of Samuel Jordan on July 5, when the paper was signed; he was then in possession. It appears to have been assumed that defendant took possession pursuant to the parol agreement. "In order to take a parol contract for the sale of lands out of the operation of the statute of frauds, its terms must be shown by full, complete, satisfactory and indubitable proof ...... It must establish the fact that possession was taken in pursuance of the contract and at or immediately after it was made ......" Hart v. Carroll, 85 Pa. 508, 510. In the opinion filed below it is said that when the paper of July 5 was signed, defendant occupied the house and that his father resided with him; both were then in possession. "In the present case," said the court in Wright v. Nulton, 219 Pa. 253, 257, "it appears that the defendants were clearly living upon the property before the alleged contract was made, and there was no visible change of possession in pursuance thereof. The subsequent possession was merely a continuation of that previously existing. This is not sufficient under the doctrine of Dougan v. Blocher, 24 Pa. 28, for it was there held that evidence of possession taken before the alleged parol contract is not sufficient to establish part performance." July 19, 1921, a draft of a deed for the real estate was offered to Samuel Jordan, then at the residence of one of the plaintiffs, for execution and $2,550 was tendered to him in payment of the balance. He refused to accept the money and to execute the deed.

There is evidence, not very clear, that after this tender was refused, defendant of his own volition deposited the $2,550 with the cashier of a certain bank to be paid to Samuel Jordan in exchange for an executed deed, and that such a deed was tendered, but was not delivered, because of a dispute between de-

fendant and his father as to what furniture was to pass by the sale. August 25, 1921, the father wrote the son a letter, "in regard to the sale of my property and furniture with the surrender of my clothing and balance of my bedroom furniture and relics and dishes and my books and . . . . . ." (it will be found in the reporter's notes), concluding, "as I have decided I need a reply within ten days and deem it necessary." There is no evidence that defendant did anything in response to that letter.

The state of the transaction then was that the father declined to go forward on the son's understanding of their agreement, and the son declined to perform on the father's understanding of it. When the letter was written, defendant could neither have enforced a conveyance from, or defended an ejectment brought by his father, because of the statute of frauds. Instead of solving their differences by negotiation, and notwithstanding his father's repudiation of the transaction, defendant during the next year made some improvements to the house and lot, which he now contends it would be inequitable to deprive him of. Assuming that he took possession of the land under the parol agreement, he knew before he made the improvements that his father would not convey. It has been said that "an owner cannot be improved out of his estate" (Aurand v. Wilt, 9 Pa. 54, 59); it can certainly not be done by improvements made after notice by a proposed vendor that he would not perform an unenforceable agreement: Holthouse v. Ryno, 155 Pa. 43; 36 Cyc. 669; and see Baxter v. Doane, 208 Pa. 585; in such circumstances a man alters his position at his peril; equity only aids where it would be inequitable not to do so. The record states in a general way when the improvements were made; electric lights were put into the house in 1922; later, water was brought in; a garage was built, perhaps in 1924, and later a chicken coop; all the improvements cost $624, not including the

value of defendant's time in assisting. It may be noted there is no evidence that the father knew anything about the making of the improvements; after repudiating the alleged sale, he was not in law bound to expect that defendant might improve the land, and again to warn him not to do so.

The payment of taxes and the assessment of the property in his name for the years 1922 to 1925 may show a claim of title (Ouin v. Brady, 8 W. & S. 139, 140), but it does not appear that the assessment was made at the request or even with the knowledge of the father, who, if he gave the matter any thought, may have supposed that the son was paying the taxes as part of the price of the privilege of occupying the house.

Moreover, before defendant can sustain the defense of an equitable title, the evidence "must show performance or part performance by the vendee which could not be compensated in damages, and such as would make rescission inequitable and unjust"; Hart v. Carroll, 85 Pa. 508, 510; Rader v. Keiper, supra. Defendant's labor is susceptible of valuation, and the cost of improvements was shown.

The judgment for defendant became final as to two of the plaintiffs who did not appeal, and, by the payment to them already described, defendant became entitled to a deed for their two undivided fifth parts in the house and lot. The result is that now, on the face of the record, the three appellants and the defendant appear to be tenants in common of the real estate. As the case must go back for retrial, we treat defendant's claim on the record as one of constructive ouster of the three plaintiffs, tenants in common with him, who may maintain ejectment: McMahon v. McMahon, 13 Pa. 376, 382.

There was liability for mesne profits from the date of Samuel Jordan's death to the date of trial, notice

being given: Act of May 2, 1876, P. L. 95; Alexander v. Shalala, 228 Pa. 297, 300.

Defendant's claim of a right to specific performance of his father's alleged promise to convey the land failed because: 1, there is no proof of what was to be delivered for the $2,600; 2, no evidence that possession of the land was taken pursuant to the parole contract; and, 3, the improvements were made after notice of repudiation of the transaction, and, if his were a case for it, were in any event susceptible of compensation.

Judgment reversed and new trial granted.